IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| LISA BIRON, | § | |
| (BOP No. 12775-049) | § | |
| V. | § | CIVIL ACTION NO. 4:15-CV-205-O |
| | § | |
| JODY UPTON, Warden, | § | |
| FMC-Carswell, et al. | § | |

**ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER AND
ORDER OF DISMISSAL UNDER 28 U.S.C. §§ 1915A(B) and 1915(e)(2)(B)**

This case is before the Court for review of pro se inmate and Plaintiff Lisa Biron's case under the screening provisions of 28 U.S.C. §§ 1915A and 1915(e)(2)(B). Having considered the motion, the Court finds that it should be and is hereby **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

**I.      BACKGROUND**

Biron, an inmate at the Bureau of Prisons' FMC-Carswell facility, filed a civil complaint. Biron was previously before this Court with a consolidated petition for writ of habeas corpus under 28 U.S.C. § 2241 challenging several disciplinary proceedings, including a disciplinary proceeding arising from some of the incidents which are the basis of this civil action. *Biron v. Upton*, No. 4:14-CV-772-O (consolidated with No. 4:14-CV-823-O). Because Biron's claims in this case are intertwined with the Court's resolution of some of the claims in the habeas case, the Court finds it appropriate to restate the background facts set forth in that case:

> [Biron] was charged in the United States District Court for the District of New Hampshire with transportation of a minor with intent to engage in criminal sexual activity, sexual exploitation of children, and possession of child pornography. Resp't's App., No. 4:14-CV-823-O, at 6, ECF No. 19.  All charges involved her minor daughter, R. B. On December 4, 2012, before the criminal trial, the 9th Circuit-Family Division Court of Manchester, New Hampshire, ordered that Petitioner "shall not contact or attempt to contact R. B. either directly or indirectly" and "shall have no contact with R. B. including third party contact except that as may be deemed

appropriate by and monitored by DCYF."[1] *Id.* at 6, 12. Also, on January 3, 2013, before the criminal trial, the convicting court, as an addendum to its detention order, ordered that Petitioner "shall have no contact (either direct or indirect) with the minor victim between now and the resolution of this case." *Id.* at 21. Following her convictions, Petitioner appealed, but, on November 14, 2014, the First Circuit affirmed the judgment of the convicting court, and, on March 23, 2015, the Supreme Court denied a petition for writ of certiorari. *Id.* at 78; Order, *Biron v. United States*, 135 S. Ct. 1576 (2015). Petitioner continues to serve her combined 480-month term of imprisonment.[2]

In this lawsuit, Plaintiff Biron names as defendants several individuals at FMC Carswell, including: Warden Jody Upton; Disciplinary Hearing Officer Valle; Lauren Cimperman, correctional officer; Ms. Wenger and Ms. Kingsley, special investigative services officers; and Ms. W.L. Smithers and Ms. E. Smith-Branton, members of the Unit Disciplinary Committee at FMC Carswell. Compl. 2, ECF No. 1.

The complaint recites several events that resulted in disciplinary charges and sanctions imposed upon Biron by FMC-Carswell officials. First, Biron complains that she received a disciplinary charge as a result of attempting to mail a letter dated June 29, 2014 to her daughter R.B., and to her power of attorney. *Id.* at 2-3 ¶¶ 12-14, 16. The letter was intercepted by Officer Wenger and not delivered. *Id.* at 2-3 ¶¶ 12-13. Plaintiff complains that Warden Upton was aware of this mail confiscation and failed to take any remedial measures. *Id.* at 3 ¶ 14. Plaintiff Biron did receive a disciplinary charge for the letter, and was, after a July 31, 2014 hearing, found guilty by Disciplinary Hearing Officer Valle of the charge of "Use of Mail for Abuses other than Criminal Activity which Circumvent Mail Monitoring Procedures." *Id.* at 3 ¶ 16; *see Biron v. Upton,* No.4:14-CV-772-O

---

[1] "DCYF" stands for the Division for Children, Youth and Families of the State of New Hampshire's Department of Health and Human Services according to the Department's website.

[2] To the extent necessary, the Court takes judicial notice of the records of this the Fort Worth division in *Biron v. Upton,* No.4:14-CV-772-O (Consolidated with No.4:14-CV-823-O).

(consolidated with No. 4:14-CV-823-O) ECF No. 7, at 5-6, 29-39, 45-47.) Plaintiff Biron alleges that Defendant Valle, on reconsideration of the July 31, 2014 hearing, again sanctioned her. Compl. 3 ¶ 16, ECF No. 1. As this Court recounted in the recent habeas corpus case, this particular disciplinary proceeding resulted in loss of various privileges and loss of good time credits. *Biron v. Upton*, No. 4:14-CV-772-O at *47, ECF No. 7 (consolidated with No. 4:14-CV-823-O).

Biron also complains of a second event that resulted in a disciplinary charge. In this regard, Biron alleges that on January 28, 2015, Defendant Cimperman issued a disciplinary report against her for "Asking a family member over the phone to find out how R.B. liked a Francine Rivers book she had received for Christmas." Compl. 4 ¶ 23, ECF No. 1. Plaintiff alleges that this event resulted in her receiving a disciplinary violation and sanctions on March 12, 2015. *Id.* at 5 ¶ 27.

Plaintiff Biron also recites another event resulting in a disciplinary proceeding and charge. She alleges that on February 24, 2015, Defendant Cimperman issued another disciplinary report against her because "plaintiff asked the family's Pastor (Plaintiff's Pastor of Record) to contact R.B. to see how she was doing." *Id.* at 5 ¶ 24. Plaintiff then recites that this too, resulted in her being found guilty of another disciplinary violation and sanctions on February 26 and 27, 2015. *Id.* at 5 ¶ 25-26.

In addition to her allegations of these events that resulted in three disciplinary proceedings, Biron makes additional allegations. She contends that Defendant Cimperman "threatened Plaintiff with placement on a "correctional management plan" for Plaintiff's "lawful efforts to contact R.B. . . . ." *Id.* at 3 ¶ 15.  She also alleges that on October 16, 2014, Warden Upton issued a "Restricted Correspondence Notification" to "bar Plaintiff's lawful mail to R.B. . . ." *Id.* at 3 ¶ 17.  Plaintiff Biron also complains that on November 19 and 30, 2014, Officer Wenger intercepted two letters to her ex-husband, Michael Biron. *Id.* at 4 ¶ 19. She alleges that Warden Upton again failed to intervene and correct the "wrongful" interference with the letters, and allowed staff to disable her ability to print

labels required to send mail. *Id.* at 4 ¶ 20.  She also alleges that as a result, Officer Wenger acted in concert with Warden Upton, by blocking her ability to make phone calls to Michael Biron and R.B.. *Id.* at 4 ¶ 21.  And, Plaintiff also contends again that in December 2014, Defendants Cimperman and Kingsley unlawfully attempted to impose a "correctional management plan" to bar her contact with R.B.  *Id.* at 4 ¶ 22.

As to each of her allegations, Plaintiff writes that she sustained violations of the "First, Fifth, and Eighth Amendments to the Constitution." Plaintiff seeks nominal and punitive damages from Defendants Upton, Cimperman, and Valle, and she seeks a preliminary and permanent injunction "ordering defendants to cease interfering with Plaintiff's association and communication to her daughter R.B. and the others named . . . ." *Id.* at 6.  She also requests a transfer back to another region. Plaintiff has also filed a motion for temporary restraining order.

## II.     LEGAL STANDARD

A complaint filed in forma pauperis that lacks an arguable basis in law should be dismissed under 28 U.S.C. § 1915. *Neitzke v. Williams*, 490 U.S. 319, 328 (1989).  Under 28 U.S.C. § 1915(e)(2)(B), a district court retains broad discretion in determining at any time whether an in-forma-pauperis claim should be dismissed.  *See* 28 U.S.C.A. § 1915(e)(2) (West 2006); *see Adepegba v. Hammons*, 103 F.3d 383, 388 (5th Cir. 1996).  Section 28 U.S.C. § 1915(e) *requires* dismissal not only when an allegation of poverty is untrue or the action is frivolous or malicious, but also when "the action . . . fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C.A. § 1915(e)(2)(A) and (B) (West 2006). Furthermore, as a part of the PLRA, Congress enacted 28 U.S.C. § 1915A, which requires the Court to review a complaint from a prisoner seeking relief from a governmental entity or governmental officer or employee as soon as possible after docketing. *See* 28 U.S.C.A. § 1915A(a) (West 2006).

Consistent with § 1915A is prior case law recognizing that a district court is not required to await a responsive pleading to conduct its § 1915 inquiry. *See Schultea v. Wood*, 47 F.3d 1427, 1434 (5th Cir. 1995). Rather, § 1915 gives judges the power to "dismiss a claim based on an indisputably meritless legal theory." *Id.* (citing *Neitzke*, 490 U.S. at 327.) After review of the Complaint under these standards, the Court concludes that all Biron's claims must be dismissed.

### III.   ANALYSIS

Plaintiff seeks relief under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics ("Bivens"),* 403 U.S. 388, 297 (1971), the Supreme Court case recognizing an individual's right to seek recovery for violation of constitutional rights by a person acting under color of federal law. The *Bivens* decision is the counterpart to 42 U.S.C. § 1983, and extends the protections afforded under § 1983 to parties injured by federal actors. *See Evans v. Ball,* 168 F.3d 856, 863 n.10 (5th Cir. 1999) ("A *Bivens* action is analogous to an action under § 1983--the only difference being that § 1983 applies to constitutional violations by state, rather than federal officials.")*, overruled on other grounds*, *Castellano v. Fragozo*, 352 F.3d 939, 948-49 & n.36 (5th Cir. 2003). Biron has named the defendants in both an individual and official capacity. But official-capacity claims for money damages based upon allegations of constitutional violations are barred because they are considered suits against the United States, which has not waived its sovereign immunity for such claims. *See Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985); *see also Marsden v. Fed. Bureau of Prisons*, 856 F. Supp. 832, 835 (S.D.N.Y. 1994) (claims for money damages against individual federal defendants in an official capacity must be dismissed for lack of subject matter jurisdiction); *Pollack v. Meese*, 737 F.Supp. 663 (D.D.C. 1990) ("[A] Bivens action may be maintained against a defendant only in his or her individual capacity, and not in his or her official capacity.") (citation omitted).

Thus, a *Bivens* action cannot be maintained "against the United States, the BOP, or BOP officers in their official capacities because such a claim is barred by the doctrine of sovereign immunity." *Gibson v. Fed. Bureau of Prisons*, 121 F. App'x. 549, 551 (5th Cir. 2004) (citing *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 71-72 (2001); *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Consequently, all Biron's *Bivens* claims against the individual defendants in an official capacity must be dismissed.[3]

### A.     Eighth Amendment

Plaintiff recites that each of her allegations amount to a violation of the Eighth Amendment's ban against cruel and unusual punishment. The Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to provide "humane conditions of confinement," ensuring that "inmates receive adequate food, clothing, shelter, and medical care . . . ." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Supreme Court has held, however, that "to the extent prison conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 346-47 (1981). Confinement that amounts to cruel and unusual punishment includes wanton and unnecessary infliction of pain, conditions grossly disproportionate to the severity of the crime warranting imprisonment, and the deprivation of the minimal civilized measures of life's necessities. *Wilson v. Lynaugh*, 878 F.2d 846, 848 (5th Cir. 1989) (citing *Rhodes,* 452 U.S. at 346-47). Biron's claims challenging the restrictions on her ability to contact her daughter and other persons, and the disciplinary and other correctional

---

[3] Sovereign immunity is not a bar to claims for injunctive relief. *See generally  Simmat v. U. S. Bureau of Prisons*, 413 F.3d 1225, 1233  (10th Cir. 2005) ("Sovereign immunity is . . . not a bar to [a prisoner's] action for injunctive relief."); *Newsome v. Vanderbilt Univ.*, 653 F.2d 1100, 1107 (6th Cir. 1981) ("An action seeking relief other than money damages and stating a claim that the agency acted or failed to act in official capacity shall not be dismissed because it is against the United States."). To the extent Biron asserts claims for injunctive relief against the individual defendants in an official capacity, such claims are barred for the same reasons noted *infra* at pages 9-11.

measures taken towards her resulting from her failure to accept those restrictions, do not amount to "wanton and unnecessary infliction of pain" or the deprivation of a "minimal civilized measure of life's necessities." Biron's loss of privileges and loss of good conduct time do not amount to cruel and unusual punishment under the Eight Amendment. As such, all Biron's claims of an Eighth Amendment violation fail to state a claim.

### B. First Amendment

Biron also alleges that each of her recited factual events amounted to a violation of her First Amendment rights. The United States Supreme Court has made it clear that prisoners retain those First Amendment rights of speech which are "'not inconsistent with [their] status as . . . prisoner[s] or with the legitimate penological objectives of the corrections system.'" *Hudson v. Palmer*, 468 U.S. 517, 523 (1984) (quoting *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). In determining the constitutional validity of prison practices that impinge upon a prisoner's rights with respect to mail, the appropriate inquiry is whether the practice is reasonably related to a legitimate penological interest. *Brewer v. Wilkinson*, 3 F.3d 816, 824 (5th Cir. 1993); *see also Jackson v. Cain*, 864 F.2d 1235, 1248 (5th Cir. 1989) (noting that when the court deals with a challenge to an action taken by prison officials rather than a challenge to a regulation, the reasonable relationship standard is applicable to determine whether that action was constitutionally permissible). Prison officials may place restraints on the exchange of non-legal mail between prisoners and outside persons and between prisoners within the prison so long as the restraint is related to a legitimate governmental interest. *See Brewer v. Wilkinson*, at 825 (citing *Turner v. Safley*, 482 U.S. 78, 87-89 (1987) and *Thornburgh v. Abbott*, 490 U.S. 401, 413-14 (1989)). Furthermore, the United States Court of Appeals for the

Fifth Circuit has upheld particular restrictions limiting an inmate's right to make contact with a crime victim who has requested no contact. *See Samford v. Dretke,* 562 F.3d 674, 678-82 (5th Cir. 2009) (employing the *Turner* factors to reject inmate's First Amendment challenge to restricting contact with his two minor sons, who had been witnesses to his brandishing of a gun and threatening to kill their mother); *Jones v. Diamond*, 594 F.2d 997, 1014 (5th Cir. 1979) (validating the use of negative mail lists and stating "jail officials may employ a 'negative mail list' to eliminate any prisoner correspondence with those on the outside who affirmatively indicate that they do not wish to receive correspondence from a particular prisoner"); *Guajardo v. Estelle*, 580 F.2d 748, 753 (5th Cir. 1978) (affirming the district court's determination that a negative mail list does not violate prisoners' First Amendment rights and stating that such lists "permit [prison officials] to deny inmates permission to correspond with persons who have objected to further correspondence").

In the instant case, although Plaintiff disagrees with the decision not to allow her to have contact with her daughter and contacts with others in effort to make contact with her daughter, this Court was provided with sufficient information in resolving her underlying petition for writ of habeas corpus to know that there was a rational basis for the implementation of the restrictions on her contact with her daughter. There is an explicit bar to such contact. As noted in *Samford v. Dretke,* "prisons have legitimate interest in protecting crime victims and their families from the unwanted communication that the prisoners when a victim requests that the prison prevent such communication." *Samford*, 562 F.3d at 680 (citing *Berdella v. Delo*, 972 F.2d 204, 209 (8th Cir. 1992)) ("[T]he government's interest in protecting the public from harassment by inmates would justify prohibiting an inmate from sending mail to persons who have affirmatively requested that

mail not be received from an inmate.") (citation omitted). As the restrictions on mail and telephone contact with victim daughter R. B. and her husband were employed in support of a legitimate penological interest, Biron has not stated a violation of her First Amendment rights.

### C. Fifth Amendment

Other than her claim that her right to due process of law under the Fifth Amendment was violated in relation to the three disciplinary proceedings, which is addressed in the *Exhaustion* and *Heck v. Humphrey* sections below, Biron also recites that officers Cimperman and Kingsley violated her Fifth Amendment rights by "threatening" and separately "attempting" to impose a "correctional management plan" upon Plaintiff. But these allegations do not actually recite any harm resulting to Biron, and thus fail to state any Fifth Amendment violation. Furthermore, Biron alleges that Warden Upton violated her rights under the Fifth Amendment by failing to "intervene" to correct the contact restrictions imposed upon her after she brought complaints to his attention. To the extent this is an allegation of a denial in the processing of a grievance, such claim does not support a constitutional violation. As the Court of Appeals for the Fifth Circuit found in *Geiger v. Jowers*: "[An inmate] does not have a federally protected liberty interest in having these grievances resolved to his satisfaction. As he relies on a legally nonexistent interest, any alleged due-process violation arising from the alleged failure to investigate his grievances is indisputably meritless." *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005); *see also Jenkins v. Henslee*, No. 3-01-CV-1996-R, 2002 WL 432948, at *2 (N.D. Tex. Mar. 15, 2002) ("An inmate does not have a constitutional entitlement to a grievance procedure. Hence any alleged violation of the grievance procedure does not amount to a constitutional violation.") (citing *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994), *cert. denied,* 514 U.S. 1022 (1995); *Antonelli v. Sheahan*, 81 F.3d 1422 (7th Cir. 1996)). Thus, Plaintiff's claims of violation of her rights under the Fifth Amendment, arising from events other than the

disciplinary proceedings, must be dismissed.

### 1. *Exhaustion*

As noted above, Biron's claims arising from the June 2014 intercepted letters were previously the basis for a petition for writ of habeas corpus under 28 U.S.C. § 2241 arising from the same events made the basis of this suit. In that case, the Court held that Biron's challenges to disciplinary case number 2602170 arising from the June 2014 letter were dismissed because Biron failed to exhaust the requisite administrative remedies before initiating suit. *Biron v. Upton,* No. 14-CV-772-O (Consolidated with No. 4:14-CV-823-O) (Mem. Op. & Order, June 9, 2015, ECF No. 16.). In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court reaffirmed that "exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones,* 549 U.S. at 21. *Jones* held that exhaustion is an affirmative defense, and subsequent Fifth Circuit cases have held that screening procedures may not be used to resolve the exhaustion question before a responsive pleading is filed. *See Jones,* 549 U.S. at 212; *Torns v. Miss. Dep't of Corr.*, 301 F. App'x (5th Cir. 2008) (citing *Carbe v. Lappin,* 492 F.3d 325, 328 (5th Cir. 2007)). In this case however, the Court has the benefit of its own review of the exhaustion issues in case number 4:14-CV-772-O (No. 4:14-CV-823-O). Thus, because the Court can rely on this proof that Biron had not exhausted her claims related to the disciplinary proceeding arising from the June 2014 letter, and because Biron has not shown in her Complaint that she has subsequently exhausted this claim, the Court concludes that all claims arising from the interception of the June 2014 letter and subsequent disciplinary proceeding and sanction must be dismissed for lack of exhaustion.

### 2. Heck v. Humphrey

The Court alternatively concludes that, as to all claims arising from the June 2014 letter interception and resulting disciplinary proceeding, and as to the other two events resulting in

disciplinary proceedings, Biron's claims are not cognizable in this suit under *Bivens*. Plaintiff seeks injunctive relief and monetary damages from the other Defendants based upon challenges to the disciplinary proceedings resulting in her disciplinary sanctions and imposition of loss of good-time credit and loss of other privileges. In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that a claim that, in effect, attacks the constitutionality of a conviction or imprisonment is not cognizable under 42 U.S.C. § 1983 and does not accrue until that conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486-87, The Supreme Court has extended *Heck* to prison disciplinary proceedings, concluding that claims for declaratory relief or monetary damages that necessarily imply the invalidity of a disciplinary punishment are not cognizable in a 42 U.S.C. § 1983 proceeding. *See Edwards v. Balisok*, 520 U.S. 641, 646-48 (1997); *Clarke v. Stadler*, 154 F.3d 186, 190-91 (5th Cir. 1998) (en banc) (holding that a claim for prospective injunctive relief that would imply the invalidity of a prisoner's conviction may be dismissed without prejudice subject to the rule of *Heck v. Humphrey*).

     Plaintiff's request to have this Court reconsider the basis and validity of the disciplinary charges and the actions of the officials involved with the investigation, charge, disciplinary proceedings and resulting sanctions, if successful, would necessarily imply the invalidity of the disciplinary convictions. Thus, such claims are not cognizable in this case under *Bivens* unless Plaintiff has satisfied the conditions set forth in *Heck. See generally Stephenson v. Reno*, 28 F.3d 26, 27-28 (5th Cir. 1994) (A federal prisoner's *Bivens* action is subject to the rule enunciated in *Heck*). Biron has not shown that she has obtained any such order, and her effort to obtain relief against one of the disciplinary proceedings through a petition for writ of habeas corpus was

dismissed. As a result, Plaintiff's claims raising constitutional challenges to the events resulting in three separate disciplinary proceedings are not cognizable, and must be dismissed. *See Heck*, 512 U.S. at 487-88.

### D.     Transfer

Biron also seeks to be transferred back to the Northeast Region. It is well settled that a prisoner does not have a constitutional right to serve a sentence in any particular institution, or to be transferred or not transferred from one facility to another. *See Olim v. Wakinekona*, 461 U.S. 238, 249-50 (1983); *Tighe v. Wall*, 100 F.3d 41, 42 (5th Cir. 1996). The Bureau of Prisons has "sole discretion" to determine where a federal inmate will be housed. *United States v. Williams*, 65 F.3d 301, 307 (2d Cir. 1995). Because the transfer of a federal inmate to another correctional institution does not implicate a constitutional interest, Biron is not entitled to the requested relief.

### E.     TRO Motion

Plaintiff also filed a motion for a temporary restraining order. Under Federal Rule of Civil Procedure 65(b), a temporary restraining order may be granted only if it clearly appears from specific facts shown by affidavit or verified complaint that immediate and irreparable injury, loss, or damage will result. Fed. R. Civ. P. 65(b)(1)(A). For the reasons recited above, Biron has not satisfied this precondition to the grant of a TRO, and her motion for such relief must be denied.

## IV.    CONCLUSION

Based on the foregoing, it is **ORDERED** that Biron's June 3, 2015 Motion for a Temporary Restraining Order (ECF No. 12) is **DENIED.**

It is **FURTHER ORDERED** that all of Plaintiff's claims for monetary damages against the Individual Defendants in their official capacities, all claims under the First Amendment, all claims under the Eighth Amendment, and all claims under the Fifth Amendment arising from events other

than the events resulting in disciplinary proceedings, are **DISMISSED WITH PREJUDICE** under 28 U.S.C. § 1915A(b)(1) and 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

It is **FURTHER ORDERED** that all Plaintiff's claims arising from the June 2014 letter and resulting disciplinary proceeding are **DISMISSED WITH PREJUDICE** for failure to exhaust; and such claims, alternatively, and all remaining claims, are **DISMISSED WITH PREJUDICE** to their being asserted again until the *Heck v. Humphrey* conditions are met,[4] under 28 U.S.C. § 1915A(b)(1) and alternatively under 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

**SO ORDERED** this **16th day** of **June, 2015.**

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

---

[4] *See Johnson v. McElveen,* 101 F.3d 423, 424 (5th Cir. 1996).