IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

_____

LISA BIRON,
(BOP No. 12775-049)

      Plaintiff,

v.

JODY UPTON, Warden,
FMC-Carswell, et al.

      Defendants.

Civil Action No. 4:15-CV-205-O

## **DEFENDANTS' MOTION TO DISMISS**

ERIN NEALY COX
United States Attorney

Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:  214-659-8626
Facsimile:   214-659-8807
brian.stoltz@usdoj.gov

Attorneys for Defendants Upton,
Cimperman, Wenger, Kingsley, and
Smith-Branton

## Table of Contents

I.   Background.................................................................................................2

    A.   Biron commits sexual offenses against her minor daughter. .......................2

    B.   Biron attempts to communicate with her victim/daughter while
        incarcerated. ...........................................................................................4

    C.   Biron files habeas corpus petitions relating to her contact with her
        victim/daughter........................................................................................5

    D.   Biron files the instant lawsuit, claiming that prison officials had
        violated her rights by preventing her from contacting her
        victim/daughter........................................................................................6

    E.   The Fifth Circuit vacates in part and remands for Biron to file an
        amended complaint....................................................................................7

    F.   Biron files her amended complaint on remand. ...........................................8

II.  Legal Standards .........................................................................................9

    A.   Rule 12(b)(6)..........................................................................................9

    B.   Qualified immunity. ..............................................................................10

III. Argument and Authorities ........................................................................12

    A.   The Court should not imply a new *Bivens* remedy for Biron's claims. ......12

        1.   Biron's claims present a new *Bivens* context...................................13

        2.   Numerous special factors counsel hesitation in expanding
            *Bivens* to encompass the novel circumstances presented by
            Biron's claims. ...............................................................................14

    B.   Even if a *Bivens* remedy were available, Biron's allegations fail to
        state any violation of a constitutional right, much less a clearly
        established right under the law at the relevant time....................................19

        1.   No clearly established law supports Biron's claims. ........................19

2. Biron fails to state any claim for relief (whether for damages or for declaratory relief); any purported claim for declaratory relief would in any event be moot; and the *Heck* bar also applies ............................................................................. 21

IV. Conclusion ............................................................................................. 25

## Table of Authorities

Cases

*Anderson v. Creighton*,
483 U.S. 635 (1987) ............................................................................................ 10

*Andrews v. Miner*,
301 F. Supp. 3d 1128 (N.D. Ala. 2017) ........................................................ 15, 16

*Ashcroft v. al-Kidd*,
563 U.S. 731 (2011) ....................................................................................... 11, 20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ......................................................................................... 9, 10

*Backe v. LeBlanc*,
691 F.3d 645 (5th Cir. 2012) ............................................................................... 11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ......................................................................................... 9, 10

*Bell v. Wolfish*,
441 U.S. 520 (1979) ............................................................................................ 18

*Biron v. Upton*,
No. 15-10607, 2016 WL 6902465 (5th Cir. 2016) ............................................... 5

*Biron v. United States*,
135 S. Ct. 1576 (2015) .................................................................................... 4, 22

*Bistrian v. Levi*,
912 F.3d 79 (3d Cir. 2018) .................................................................................. 19

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
403 U.S. 388 (1971) .............................................................................................. 1

*Brewer v. Wilkinson*,
3 F.3d 816 (5th Cir. 1993) ................................................................................... 22

*Brosseau v. Haugen*,
543 U.S. 194 (2004) ............................................................................................ 20

*Buenrostro v. Fajardo*,
No. 1:14-CV-75, 2017 WL 6033469, at *3 (E.D. Cal. Dec. 5, 2017) ................. 16

*Bustillos v. El Paso County Hosp. Dist.*,
    891 F.3d 214 (5th Cir. 2018)................................................................. 21

*Carlson v. Green*,
    446 U.S. 14 (1980) ...................................................................... 13, 14

*Cass v. City of Abilene*,
    814 F.3d 721 (5th Cir. 2016)................................................................. 20

*Clarke v. Stadler*,
    154 F.3d 186 (5th Cir. 1998)................................................................. 24

*Collier v. Montgomery*,
    569 F.3d 214 (5th Cir. 2009)................................................................. 19

*Collins v. Morgan Stanley Dean Witter*,
    224 F.3d 496 (5th Cir. 2000)................................................................... 1

*Connelly v. Comptroller of the Currency*,
    876 F.2d 1209 (5th Cir. 1989).............................................................. 11

*Davis v. Passman*,
    442 U.S. 228 (1979) .......................................................................... 13

*Edwards v. Balisok*,
    520 U.S. 641 (1997) .......................................................................... 24

*Feit v. Ward*,
    886 F.2d 848 (7th Cir. 1989)................................................................. 23

*Fraire v. City of Arlington*,
    957 F.2d 1268 (5th Cir. 1992).............................................................. 11

*Gonzalez v. Hasty*,
    269 F. Supp. 3d 45 (E.D.N.Y. 2017)................................................ 16, 19

*Harlow v. Fitzgerald*,
    457 U.S. 800 (1982) ...................................................................... 10, 11

*Heck v. Humphrey*,
    512 U.S. 477 (1994) ........................................................................ 7, 24

*Herman v. Holiday*,
    238 F.3d 660 (5th Cir. 2001)................................................................. 23

*Howard v. Lackey*,
  No. 7:16-CV-129, 2018 WL 1157547 (E.D. Ky. Mar. 5, 2018) ........................... 16

*Hunter v. Bryant*,
  502 U.S. 224 (1991) ..................................................................................... 10, 11

*In re Commonwealth Oil Ref. Co.*,
  805 F.2d 1175 (5th Cir. 1986) ................................................................................ 9

*Joseph v. Bach & Wasserman, L.L.C.*,
  487 F. App'x 173 (5th Cir. 2012) ........................................................................... 1

*Kovacic v. Villarreal*,
  628 F.3d 209 (5th Cir. 2010) ................................................................................ 12

*MacMillan Bloedel Ltd. v. Flintkote Co.*,
  760 F.2d 580 (5th Cir. 1985) .................................................................................. 1

*Malley v. Briggs*,
  475 U.S. 335 (1986) ............................................................................................. 11

*Mercer v. Matevousian*,
  No. 1:18-CV-265, 2018 WL 3917969 (E.D. Cal. Aug. 14, 2018) ........................ 19

*Morgan v. Swanson*,
  659 F.3d 359 (5th Cir. 2011) (en banc) ................................................................ 20

*Mullenix v. Luna*,
  136 S. Ct. 305 (2015) ................................................................................ 10–11, 20

*Muhammad v. Gehrke*,
  No. 2:15-CV-334, 2018 WL 1334936 (S.D. Ind. Mar. 15, 2018) ........................ 16

*Pearson v. Callahan*,
  555 U.S. 223 (2009) ............................................................................................. 20

*Shabazz v. Franklin*,
  380 F. Supp. 2d 793 (N.D. Tex. 2005) ................................................................. 24

*Siegert v. Gilley*,
  500 U.S. 226 (1991) ............................................................................................. 11

*Smith v. City of Tupelo*,
  281 F. App'x 279 (5th Cir. 2008) .......................................................................... 23

*Stephenson v. Reno*,
　　28 F.3d 26 (5th Cir. 1994) ................................................................. 24

*Thomas v. Matevousian*,
　　No. 1:17-CV-1592, 2018 WL 5099763 (E.D. Cal. Oct. 18, 2018) ....................... 23

*Thomas v. Matevousian*,
　　No. 1:17-CV-1592, 2019 WL 266323 (E.D. Cal. Jan. 18, 2019) ......................... 23

*Thornburgh v. Abbott*,
　　490 U.S. 401 (1989) ....................................................................... 22

*Vanderklok v. United States*,
　　868 F.3d 189 (3d Cir. 2017) ............................................................. 18

*Vann v. City of Southaven*,
　　884 F.3d 307 (5th Cir. 2018) ........................................................ 20, 21

*Vega v. United States*,
　　881 F.3d 1146 (9th Cir. 2018) ........................................................... 16

*Wyatt v. Fletcher*,
　　718 F.3d 496 (5th Cir. 2013) ............................................................ 20

*Wooley v. City of Baton Rouge*,
　　211 F.3d 913 (5th Cir. 2000) ............................................................ 20

*Ziglar v. Abbasi*,
　　137 S. Ct. 1843 (2017) ...................................... 12, 13, 14, 15, 16, 17, 18


Statutes, Rules, and Other Authorities

18 U.S.C. § 4001(b) ........................................................................ 18

18 U.S.C. § 4042(a) ........................................................................ 18

This case was originally filed by plaintiff Lisa Biron in 2015, at a time when Biron was incarcerated at Federal Medical Center, Carswell (FMC Carswell). (Doc.[1] 1.) Biron sued various prison officials under a theory that they had improperly interfered with Biron's asserted right to contact her daughter, who was the victim of Biron's underlying criminal sexual offenses. After this Court dismissed the case during screening, the Fifth Circuit partially vacated and remanded to allow Biron to file an amended complaint limited to her personal capacity *Bivens*[2] claims against the defendants.

The defendants now move to dismiss Biron's amended complaint. As explained below, the defendants are entitled to qualified immunity and dismissal of all claims against them because: (1) Biron cannot show that a *Bivens* remedy is available for her novel claims under the First and Fifth Amendments; and (2) even if such claims were theoretically possible, Biron cannot show that the defendants' alleged actions violated any clearly established law and fails to state a claim for relief generally, and in any event, any purported claims would be partially moot and *Heck*-barred. Accordingly, the amended complaint should be dismissed in its entirety.

---

[1] "Doc. __" citations refer to the documents on the docket of this action. In addition, this motion cites certain documents on the dockets of related habeas cases that Biron filed in this district, captioned *Biron v. Upton*, No. 4:14-CV-772-O, and *Biron v. Upton*, No. 4:14-CV-883-O. Documents from these cases are cited as "Habeas No. 4:14-CV-772-O Doc. __" and "Habeas No. 4:14-CV-883-O Doc. __," as applicable. This Court may consider and take judicial notice of these materials because they are records of a related court proceeding and also because Biron refers to her habeas cases in both her original and amended complaints in this action (*see* Doc. 1 at 1 n.1, 3 n.2 (original complaint); Doc. 27 at 1–2 (amended complaint)). *See MacMillan Bloedel Ltd. v. Flintkote Co.*, 760 F.2d 580, 587 (5th Cir. 1985) ("A court may take judicial notice of related proceedings and records in cases before the same court."); *Joseph v. Bach & Wasserman, L.L.C.*, 487 F. App'x 173, 178 n.2 (5th Cir. 2012) (taking judicial notice of a document filed in state court as a "matter of public record"); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) (explaining that "pleadings" for purposes of Rule 12(b)(6) includes matters referred to in the plaintiff's complaint and central to the plaintiff's claims).

[2] *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

## I.      Background

### A.      Biron commits sexual offenses against her minor daughter.

In May 2013, Biron was convicted of transportation with intent to engage in criminal sexual activity, sexual exploitation of children, and possession of child pornography in the United States District Court for the District of New Hampshire.  (*See* Habeas No. 4:14-CV-772-O Doc. 7 at 006; Habeas No. 4:14-CV-772-O Doc. 16 at 1.)  These charges involved Biron's minor daughter (who was referred to as R.B.).  (Habeas No. 4:14-CV-772-O Doc. 16 at 1.)  Biron was sentenced to a term of imprisonment of 480 months to be followed by a lifetime period of supervised release.  (Habeas No. 4:14-CV-823-O Doc. 19 at 026–28.)  Biron's convictions were affirmed by the First Circuit on November 14, 2014.  (Habeas No. 4:14-CV-823-O Doc. 19 at 078.)

Prior to Biron's criminal convictions, on December 4, 2012, the 9th Circuit-Family Division Court of Manchester, New Hampshire, held a "dispositional hearing" regarding Biron's parental rights with respect to her daughter and entered a juvenile abuse/neglect order.  (Habeas No. 4:14-CV-823-O Doc. 19 at 006.)  The order explained that Biron was alleged to have posted a Craigslist ad inviting an adult male to "party" with her and her daughter, which resulted in a male engaging in sexual relations with both Biron and, with Biron's encouragement, her daughter (who was 14 years old).  (Habeas No. 4:14-CV-823-O Doc. 19 at 006–07.)  Finding that Biron's daughter had been both abused and neglected, the New Hampshire court awarded legal custody of the

daughter to the Division for Children, Youth & Families (DCYF)[3] and ordered that Biron "shall not contact or attempt to contact [R.B.] either directly or indirectly" and "shall have no contact with [R.B.] including third party contact except that as may be deemed appropriate by and monitored by DCYF." (Habeas No. 4:14-CV-823-O Doc. 19 at 006, 009, 012.)

In effectively terminating Biron's parental rights and barring her from contacting her daughter, the New Hampshire court order did not purport to be merely a temporary or interim form of relief. (*See* Habeas No. 4:14-CV-823-O Doc. 19 at 006–12.) For example, the order did not state that the "no contact" provision applied only for a temporary period of time, pending some further proceedings or pending the resolution of Biron's criminal case. (*See* Habeas No. 4:14-CV-823-O Doc. 19 at 012.) However, the order did indicate that *other* court orders had previously been issued which apparently had some kind of interim "no contact" effect—the New Hampshire order noted that Biron was "not able to care for her daughter due to no contact orders." (*See* Habeas No. 4:14-CV-823-O Doc. 19 at 006.) One such order was also issued by the magistrate judge in Biron's federal criminal case, and forbade Biron from having "contact (either direct or indirect) with the minor victim between now and the resolution of the case." (Habeas No. 4:14-CV-823-O Doc. 19 at 021.)

---

[3] DCYF is a division of the State of New Hampshire's Department of Health and Human Services. (*See* Habeas No. 4:14-CV-772-O Doc. 16 at 1.)

**B.      Biron attempts to communicate with her victim/daughter while incarcerated.**

Subsequently, while confined in the Federal Bureau of Prisons serving her 480-month sentence, Biron made several attempts to communicate with her daughter through the mail.  (*See* Habeas No. 4:14-CV-772-O Doc. 7 at 027–36; Habeas No. 4:14-CV-823-O Doc. 19 at 033, 053, 055–56, 061, 064.)  Prison officials intercepted this mail and lodged administrative disciplinary charges against Biron, which resulted in the loss of various prison privileges and good-time credit against her sentence.  (*See* Habeas No. 4:14-CV-772-O Doc. 16 at 2–3.)  The disciplinary charges were premised on, among other things, the fact that Biron was under a "no contact" order with respect to her daughter.  (*E.g.*, Habeas No. 4:14-CV-823-O Doc. 19 at 051.)  Biron took the position that there was no current "no contact" order in effect, apparently under a theory that the only such order that had been issued was the order of the magistrate judge in Biron's criminal case that was limited in duration to the time period of the criminal case.[4] (Habeas Doc. No. 4:14-CV-823-O 19 at 051; *see also* Habeas No. 4:14-CV-823-O Doc. 19 at 046 (recounting Biron's claim that the only "no contact" order was "a magistrate's pretrial order that expired when I got sentenced").)  However, the prison disciplinary hearing officer also reviewed the order of the New Hampshire state court, (*see* Habeas

---

[4] Biron's claim that she believed there was not any "no contact" order in effect is inconsistent with the fact that she attempted to hide her daughter's identity when attempting to contact her, by using a coded reference (referring to her daughter as "cousin Erin") in at least one letter she attempted to mail.  (*See* Habeas No. 4:14-CV-823-O Doc. 19 at 051, 053.)

In addition, Biron's criminal case was still pending until at least March 23, 2015, which is when her petition for certiorari was denied by the Supreme Court.  *See Biron v. United States*, 135 S. Ct. 1576 (2015).  Accordingly, even if the only "no contact" order had been the one issued by the magistrate judge, that order by its own terms remained in effect until "the resolution of this case," and the case was not finally resolved until the Supreme Court denied certiorari.  (Habeas No. 4:14-CV-823-O Doc. 19 at 021.)

Doc. 19 at 050), and explained that there was not "any information showing the . . . 'no contact order' was ever lifted or removed," (Habeas Doc. 19 at 051).

**C.    Biron files habeas corpus petitions relating to her contact with her victim/daughter.**

Biron later filed petitions for habeas corpus in which she challenged the results of the prison disciplinary proceedings and sought the restoration of her good-time credit. (*See* Habeas No. 4:14-CV-772-O Doc. 1; Habeas No. 4:14-CV-823-O Doc. 1.)  These proceedings were consolidated in this Court (under the earlier-filed action, *Biron v. Upton*, No. 4:14-CV-772-O), and the Court then issued an order resolving all claims against Biron.  (*See* Habeas No. 4:14-CV-8772-O Doc. 16 at 1.)  The Court explained that Biron had failed to exhaust administrative remedies with respect to several of the disciplinary convictions at issue, and therefore dismissed her petitions as to those matters. (*See* Habeas No. 4:14-CV-8772-O Doc. 16 at 8–9.)  The Court then addressed one of Biron's disciplinary convictions on the merits, and denied relief after explaining that the prison disciplinary hearing officer's decision was supported by sufficient evidence— including relevant court orders—and did not violate due process.  (Habeas No. 4:14-CV-8772-O Doc. 16 at 5–8.)  The Court specifically noted the order from the New Hampshire court forbidding Biron from contacting her daughter.  (Habeas No. 4:14-CV-8772-O Doc. 16 at 1.)  The Court's consolidated dismissal and denial of Biron's habeas corpus petitions was affirmed by the Fifth Circuit on November 23, 2016.  *See Biron v. Upton*, No. 15-10607, 2016 WL 6902465 (5th Cir. 2016).

**D.    Biron files the instant lawsuit, claiming that prison officials had violated her rights by preventing her from contacting her victim/daughter.**

The instant case was commenced by Biron in March 2015 as a civil-rights complaint against a number of FMC Carswell officials.  (Doc. 1 at 1.)  Biron sued the defendants in both their official capacities, seeking declaratory and injunctive relief, and also in their individual capacities for money damages under *Bivens*.  (Doc. 1 at 1, 5–6.) With respect to both types of claims, Biron's theory was that prison officials had violated her rights by preventing her from contacting her victim/daughter and by subjecting her to prison disciplinary charges based on her attempts to contact her victim/daughter.  (Doc. 1 at 1–6.)

This Court conducted an initial screening of Biron's original complaint while taking judicial notice of the record of the consolidated habeas proceeding.  (Doc. 13 at 1–2.)  After recounting the facts of Biron's criminal proceeding and the New Hampshire court's order that Biron not contact her daughter, the Court found that Biron failed to state any claim for a violation of her First Amendment rights, because restrictions on her mail and telephone contact with her victim/daughter were employed in support of a legitimate penological interest.  (Doc. 13 at 47–48.)  The Court also determined that Biron's allegations that the prison officials' actions violated the Eighth Amendment failed to state a claim for relief, because the contact restrictions and related disciplinary measures did not amount to a wanton infliction of pain or a deprivation of the minimal civilized measure of life's necessities so as to amount to cruel and unusual punishment. (Doc. 13 at 6–7.)  The Court likewise found that Biron had not stated any Fifth

Amendment claim with her allegations that prison officials' attempt to impose a "correctional management plan" upon Biron and their failure to grant her relief in grievance proceedings somehow violated her rights.  (Doc. 13 at 9–10.)  Finally, with respect to any claim by Biron that her rights had been violated in connection with the prison disciplinary proceedings, the Court noted that these issues arose from the same matters as Biron's habeas corpus petitions, and that in the consolidated habeas proceeding the Court had reviewed the question of whether administrative remedies had been exhausted and could rely on its finding in that case that administrative remedies had not been exhausted for certain issues.  (Doc. 13 at 10.)  Alternately, the Court also concluded that all claims arising from the disciplinary charges were barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), because the relief sought by Biron on her civil-rights claim would call into question the validity of the results of the prison disciplinary proceedings.  (Doc. 13 at 10–11.)

The Court entered a final judgment dismissing Biron's claims, and Biron thereafter appealed.  (*See* Doc. 14; Doc. 15.)

## E.     The Fifth Circuit vacates in part and remands for Biron to file an amended complaint.

On appeal, the Fifth Circuit found that Biron had "explicitly abandoned her Eighth Amendment claims" and had also "abandoned any argument about the . . . dismissal of her claims against the defendants in their official capacity."  (*See* Doc. 24 at 5.)  That left only Biron's *Bivens* claims against the defendants, in their personal capacity, under the First and Fifth Amendments.  (*See* Doc. 24 at 5.)  With respect to these claims, the Fifth

Circuit expressed "no opinion on the merits," but partially vacated and remanded to allow Biron to file an amended complaint.  (Doc. 24 at 6.)  The court also noted a "foundational issue of whether *Bivens* even applies" to allow such claims to proceed against the defendants in their personal capacities, but left this issue for remand.  (Doc. 24 at 5–6.)

**F.      Biron files her amended complaint on remand.**

Biron subsequently an amended complaint after remand.  (Doc. 27.)  This document is the live pleading and names as defendants the following prison officials:  (1) Jody Upton, Warden of FMC Carswell; (2) Lauren Cimperman (now Carter), a staff psychologist; (3) Debra Wenger, a special investigative services (SIS) officer; (4) Kimberlie Kingsley, another SIS officer; and (5) E. Smith-Branton, identified as a member of the unit disciplinary committee.  (*See* Doc. 27, ¶¶ 4–7.)

In the amended complaint, Biron alleges that Wenger blocked attempts by Biron to communicate with her victim/daughter, (Doc. 27, ¶¶ 9–10, 14, 16); that Dr. Cimperman told Biron not to attempt to contact her victim/daughter, coordinated with Kingsley to impose a "correctional management plan" to bar Biron's contact with her victim/daughter, and initiated disciplinary action against Biron for attempting to contact her victim/daughter, (Doc. 27, ¶¶ 17–19); that Smith-Branton "sanctioned" Biron by taking away telephone privileges based on Biron's attempts to contact her victim/daughter, (Doc. 27, ¶¶ 20–21); and that Warden Upton "failed to act" or "failed to intervene" to correct these alleged wrongs, (Doc. 27, ¶¶ 11, 15).  Biron asserts that the defendants violated her rights under the First and Fifth Amendments, and seeks both monetary damages and a declaratory judgment.  (*See* Doc. 27, ¶¶ 30–31.)  The defendants

now invoke the defense of qualified immunity and move to dismiss all claims against them under Rule 12(b)(6) of the Federal Rules of Civil Procedure (and also under Rule 12(b)(1) to the extent Biron is still seeking to assert claims for declaratory relief that would have been rendered moot by her transfer to a different prison[5]).

## II.    Legal Standards

### A.    Rule 12(b)(6).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)). Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although "the

---

[5] *See In re Commonwealth Oil Ref. Co.*, 805 F.2d 1175, 1180–81 (5th Cir. 1986) (whether claims are moot is a jurisdictional question).

pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it

demands more than "'labels and conclusions.'"  *Iqbal*, 556 U.S. at 678 (quoting

*Twombly*, 550 U.S. at 555).  And "a formulaic recitation of the elements of a cause of

action will not do."  *Id.* (quoting *Twombly*, 550 U.S. at 555).

**B.      Qualified immunity.**

In addition, because the defendants have invoked qualified immunity as a defense

to Biron's *Bivens* claims against them, the legal standards applicable to that doctrine are

relevant.  Qualified immunity insulates a government official from civil liability when the

official's actions do not "violate clearly established statutory or constitutional rights of

which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818

(1982).  For a right to be "clearly established," the right's contours must be "sufficiently

clear that a reasonable official would understand that what he is doing violates that right."

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  Individual liability thus turns on the

objective legal reasonableness of the defendant's actions assessed in light of clearly

established law at the time.  *Hunter v. Bryant*, 502 U.S. 224, 227–28 (1991); *Anderson*,

483 U.S. at 639–40.  In *Harlow*, the Court explained that a key question is "whether that

law was clearly established at the time an action occurred" because "[i]f the law at that

time was not clearly established, an official could not reasonably be expected to

anticipate subsequent legal developments, nor could he fairly be said to 'know' that the

law forbade conduct not previously identified as unlawful."  457 U.S. at 818.  If public

officials of reasonable competence could differ on the lawfulness of a defendant's

actions, the defendant is entitled to qualified immunity.  *See Mullenix v. Luna*, 136 S. Ct.

305, 308 (2015); *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Fraire v. City of Arlington*, 957 F.2d 1268, 1273 (5th Cir. 1992). "[A]n allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner." *Malley*, 475 U.S. at 341.

To overcome qualified immunity, a plaintiff must "plead[] facts showing (1) that the official violated a . . . constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow*, 457 U.S. at 818); *see also Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) ("A plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity."). In conducting this analysis, it should not be assumed that the plaintiff has stated a claim, i.e., asserted a violation of a constitutional right. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991). Rather, there must be a certainty that, if the facts alleged by the plaintiff are true, a violation has clearly occurred. *Connelly v. Comptroller of the Currency*, 876 F.2d 1209, 1212 (5th Cir. 1989). A mistake in judgment does not cause an official to lose his qualified immunity defense. In *Hunter*, the Supreme Court explained:

> The qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." This accommodation for reasonable error exists because "officials should not err always on the side of caution" because they fear being sued.

502 U.S. at 229 (internal citations omitted).  When a defendant relies on qualified

immunity, the burden is on the plaintiff to negate this defense.  *Kovacic v. Villarreal*, 628

F.3d 209, 211 (5th Cir. 2010).

### III.    Argument and Authorities

As discussed below, Biron fails to state any claim for relief and fails to overcome

the defendants' qualified immunity because:  (a) the Court should not imply a new *Bivens*

remedy to Biron's novel claims under the First and Fifth Amendments relating to prison

officials' management of Biron's attempts to contact her victim/daughter; and (b) in any

event, even if this Court were to imply a *Bivens* remedy, Biron cannot identify any

clearly established law showing that the defendants' actions amounted to constitutional

violations, and her allegations also generally fail to state a claim for relief and are barred,

in whole or in part, on grounds of mootness and under *Heck*.

### A.    The Court should not imply a new *Bivens* remedy for Biron's claims.

In its opinion in this case, the Fifth Circuit noted but left for resolution on remand

the "foundational issue of whether *Bivens* even applies" to allow claims of the type

asserted by Biron.  (Doc. 24 at 5–6.)  In noting this issue, the Fifth Circuit cited its prior

decision in *Butts v. Martin*, 877 F.3d 571 (5th Cir. 2017), which in turn drew on the

Supreme Court's 2017 decision in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017).  (*See* Doc. 24

at 5.)  In *Abbasi*, the Supreme Court emphasized that implying a *Bivens* remedy "is now a

'disfavored' judicial activity," and that whenever a case presents a new *Bivens* context, a

judicially-created damages remedy should not be recognized if any "special factors"

counsel hesitation in doing so.  *Abbasi*, 137 S. Ct. at 1857 (internal citations omitted); *see*

*also id.* at 1859–60. "If the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court, then the context is new" and courts should be cautious of recognizing any implied *Bivens* remedy. *Id.* at 1859.

### 1. Biron's claims present a new *Bivens* context.

Biron has conceded that her claims present a new *Bivens* context. (*See* Doc. 28 at 3 ("Ms. Biron acknowledges that her claims present a new context as they are meaningfully different than any previous *Bivens* cases decided by the Supreme Court.").) The defendants agree. In *Abbasi*, the Supreme Court explained that it has recognized *Bivens* claims in only three specific contexts:

> (1) in *Bivens* itself, for an alleged Fourth Amendment violation brought against federal agents for a warrantless search and seizure in a home;
>
> (2) in *Davis v. Passman*, 442 U.S. 228 (1979), for an alleged Fifth Amendment claim based on gender discrimination by a Congressman against an employee; and
>
> (3) in *Carlson v. Green*, 446 U.S. 14 (1980), for an alleged Eighth Amendment claim against prison officials for the fatal failure to treat a prisoner's asthma.

*Abbasi*, 137 S. Ct. at 1854–55. "These three cases—*Bivens*, *Davis*, and *Carlson*— represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Id.* at 1855. Biron's claims are distinguishable from these three cases and thus present a new *Bivens* context. Indeed, *Carlson* is the only one of the three cases identified in *Abbasi* that had anything to do with the treatment of prisoners, and it involved an alleged failure to provide medical treatment for an inmate with a "serious[]" and "chronic asthmatic condition" that was known to prison officials.

*Carlson*, 446 U.S. at 16 n.1.  The Supreme Court then recognized an implied Eighth

Amendment damages claim for this "failure to provide medical treatment" that resulted in

the inmate's death.  *See Abbasi*, 137 S. Ct. at 1859 (explaining *Carlson*'s holding).

In stark contrast, Biron's claims do not relate to medical care and, in any event, the

Fifth Circuit's prior opinion in this case establishes that Biron has abandoned any

potential claim under the Eighth Amendment.  (*See* Doc. 24 at 5.)  Accordingly, her

purported claims under the First and Fifth Amendments represent a new context for

which expansion of the *Bivens* remedy is disfavored.

### 2. Numerous special factors counsel hesitation in expanding *Bivens* to encompass the novel circumstances presented by Biron's claims.

When a purported *Bivens* claim is asserted in a new context, *Abbasi* requires

consideration of whether "special factors" counsel against inferring such a cause of action

in the absence of "affirmative action by Congress" to create one.  *Abbasi*, 137 S. Ct. at

1857.  As clarified by *Abbasi*, this "inquiry must concentrate on whether the Judiciary is

well suited, absent congressional action or instruction, to consider and weigh the costs

and benefits of allowing a damages action to proceed."  *Id.* at 1857–58.  A *Bivens* remedy

should not be inferred if "there are sound reasons to think Congress *might* doubt the

efficacy or necessity of a damages remedy as part of the system for enforcing the law and

correcting a wrong."  *Id.* at 1858 (emphasis added).  Relatedly, "if there is an alternative

remedial structure present in a certain case," the existence of that existing process "alone

may limit the power of the Judiciary to infer a new *Bivens* cause of action."  *Id.*  Biron

cannot show that a *Bivens* claim should be recognized here, especially given the special

factors present.

### a.   Alternative processes available to Biron foreclose a *Bivens* remedy.

One key consideration against implying a *Bivens* remedy in a new context is the availability of alternative processes to address the allegedly improper actions by prison officials.  For example, prisoners like Biron can seek "an injunction requiring the warden to bring his prison into compliance" or can seek "some other form of equitable relief." *Abbasi*, 137 S. Ct. at 1865.  And this "existence of alternative remedies usually precludes a court from authorizing a *Bivens* action."  *Id.*  Here, in fact, Biron has already taken advantage of several alternative processes available to her by:  (1) filing separate habeas actions to contest the discipline imposed against her for attempting to contact her victim/daughter; and (2) filing official-capacity claims for equitable relief.[6]

The Federal Bureau of Prisons' Administrative Remedy Program is another alternative process available to prisoners like Biron.  Under this program, prisoners can file grievances about any aspect of their confinement, the agency must provide written responses in specified timeframes, and prisoners may appeal institution-level responses to the agency's regional and central offices.  *See* 28 C.F.R. §§ 542.10–.19.  Numerous courts post-*Abbasi* have recognized that the Administrative Remedy Program is an alternative process and a special factor that forecloses expansion of the *Bivens* remedy.

---

[6] The fact that Biron did not prevail in the habeas action and abandoned her official-capacity claims on appeal does not change the calculus, because it is the *availability* of the alternative remedy that is key, not whether the person is able to ultimately succeed under that remedy.  *See Andrews v. Miner*, 301 F. Supp. 3d 1128, 1134 (N.D. Ala. 2017) (rejecting expansion of *Bivens* into a new context after noting that the prisoner was able to pursue administrative remedies, "albeit unsuccessfully").

*See, e.g.*, *Vega v. United States*, 881 F.3d 1146, 1154 (9th Cir. 2018); *Gonzalez v. Hasty*, 269 F. Supp. 3d 45, 60 (E.D.N.Y. 2017); *Andrews v. Miner*, 301 F. Supp. 3d 1128, 1134 (N.D. Ala. 2017); *Muhammad v. Gehrke*, No. 2:15-CV-334, 2018 WL 1334936, at *4 (S.D. Ind. Mar. 15, 2018); *Howard v. Lackey*, No. 7:16-CV-129, 2018 WL 1157547, at *3 (E.D. Ky. Mar. 5, 2018); *Buenrostro v. Fajardo*, No. 1:14-CV-75, 2017 WL 6033469, at *3 (E.D. Cal. Dec. 5, 2017).

Moreover, Biron also could have challenged any "no contact" orders or orders terminating her parental rights in the underlying state family-court proceedings or in her criminal case (e.g., the magistrate judge's order).  Biron essentially seeks to collaterally challenge these decisions through an expansion of the *Bivens* remedy, but that is not proper given that she had ample opportunity to litigate the issue of her relationship with her victim/daughter in these other proceedings.

### b.   Additional special factors further counsel against *Bivens* expansion here.

In addition to the alternative processes discussed above, one of the most significant special factors, emphasized repeatedly in *Abbasi*, are separation-of-powers principles.  *See Abbasi*, 137 S. Ct. at 1857 ("When a party seeks to assert an implied cause of action under the Constitution itself, . . . separation-of-powers principles are or should be central to the analysis.").  *Abbasi* recognized that Congress' failure to provide a damages remedy is both "relevant" and "telling" when it has regulated extensively in a specific arena and made specific policy choices as to how complaints should be resolved. *Id.* at 1862.  Here, Congress has legislated extensively with respect to prisoners' rights,

and "legislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation." *Id.* at 1865. "Some 15 years after *Carlson* was decided, Congress passed the Prison Litigation Reform Act of 1995 [PLRA], which made comprehensive changes to the way prisoner abuse claims must be brought in federal court." *Id.* (citing 42 U.S.C. § 1997e). "So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs." *Id.* However, the PLRA "does not provide for a standalone damages remedy against federal jailers," meaning that Congress could have extended the *Carlson* damages remedy to cases involving other types of prisoner mistreatment, but chose not to. *See id.*

Additional special factors that weigh against extending *Bivens* to the type of First and Fifth Amendment claims asserted by Biron are the system-wide costs associated with the creation of a damages remedy absent congressional action. As *Abbasi* instructs, "the decision to recognize a damages remedy requires an assessment of its impact on governmental operations systemwide." *Abbasi*, 137 S. Ct. at 1858. This includes "the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself . . . ." *Id.* In the prison context, these burdens and costs are particularly high due, in part, to the sheer volume of potential litigation arising from the creation of a *Bivens* remedy—there are more than 180,000 federal inmates and nearly 36,000 BOP employees. *See* Fed. Bureau of Prisons, About Our Agency, https://www.bop.gov/about/agency/ (last visited Feb. 2, 2019).

Yet another special factor counseling hesitation here is the difficulty in creating a

workable cause of action.  *See Abbasi*, 137 S. Ct. at 1864–65 (discussing the lack of

clarity as to the legal standard for a purported *Bivens* claim alleging a warden allowed

staff to abuse a pretrial detainee); *Vanderklok v. United States*, 868 F.3d 189, 209 (3d Cir.

2017) (recognizing the "inherent uncertainty surrounding" the applicable legal standard

as "a factor counseling hesitation" in expanding *Bivens*).  Congress and the Supreme

Court have repeatedly deferred to the Attorney General and prison administrators'

expertise because "the problems that arise in the day-to-day operation of a corrections

facility are not susceptible of easy solutions."  *Bell v. Wolfish*, 441 U.S. 520, 547 (1979);

*see also* 18 U.S.C. §§ 4001(b), 4042(a).  Biron's claims relating to prison officials'

attempts to manage Biron's contact with her victim/daughter are matters of prison

administration and are not subject to any clear legal standard so as to make a *Bivens*

claim viable.  Moreover, by not legislating a *Bivens*-type remedy in this area despite

ample opportunity to do so, it is clear that Congress does not intend for such a remedy to

be created and that these matters of prison discipline and control are better left to prison

officials with appropriate oversight through existing court procedures (like habeas

petitions).  And this is especially true in the context of this particular case, given the self-

evident policy implications of preventing sexual predators like Biron from contacting and

having further opportunities to attempt to manipulate and harm their victims, even from

prison.

### c.    Summary.

For the foregoing reasons, there are no grounds for expanding the *Bivens* remedy

to encompass Biron's claims.  Indeed, with respect to Biron's purported First

Amendment claims, the Third Circuit's recent discussion of such a claim in *Bistrian v. Levi*, 912 F.3d 79 (3d Cir. 2018), is instructive.  In rejecting a prisoner's attempt to proceed on a First Amendment *Bivens* claim, the court explained that "the Supreme Court has never recognized a *Bivens* remedy under the First Amendment" and that, "[n]ationwide, district courts seem to be in agreement that, post-*Abbasi*, prisoners have no right to bring a *Bivens* action for violation of the First Amendment."  *Id.* at 95, 96 (internal citations and quotation marks omitted).  Similarly, courts that have considered purported Fifth Amendment *Bivens* claims post-*Abbasi* have found such claims unavailable.  *See Gonzalez*, 269 F. Supp. 3d at 59–63; *Mercer v. Matevousian*, No. 1:18-CV-265, 2018 WL 3917969, at *2–3 (E.D. Cal. Aug. 14, 2018).  This Court should grant the defendants' motion and dismiss Biron's amended complaint on the basis that no *Bivens* remedy is available under *Abbasi*.

**B.     Even if a *Bivens* remedy were available, Biron's allegations fail to state any violation of a constitutional right, much less a clearly established right under the law at the relevant time.**

Even assuming *Bivens* were judicially expanded to encompass Biron's claims, the defendants would still be entitled to a dismissal because:  (1) Biron does not allege the violation of any constitutional right that was clearly established law at the time of the defendants' actions; and (2) Biron fails to state any claim for relief generally and any purported claims are partially moot (due to Biron's transfer) and also *Heck*-barred.

**1.     No clearly established law supports Biron's claims.**

A "plaintiff has the burden to negate the assertion of qualified immunity" once that defense has been raised.  *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009).

To establish that qualified immunity does not apply, a plaintiff must prove that the defendant (1) "violated a statutory or constitutional right" of the plaintiff's and that (2) "the right was 'clearly established' at the time of the challenged conduct." *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc).  The analysis may begin (and end) at either step.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

"A right is clearly established only if its contours are 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Wyatt v. Fletcher*, 718 F.3d 496, 502 (5th Cir. 2013) (quoting *Wooley v. City of Baton Rouge*, 211 F.3d 913, 919 (5th Cir. 2000)).  "This inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Mullenix*, 136 S. Ct. at 308 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)).  Although the Supreme Court does "not require a case directly on point," it has explained that "existing precedent must have placed the statutory or constitutional question beyond debate," and it has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *al-Kidd*, 563 U.S. at 741, 742.  "It is the plaintiff's burden to find a case in his favor that does not define the law at a 'high level of generality.'" *Vann v. City of Southaven*, 884 F.3d 307, 310 (5th Cir. 2018) (quoting *Cass v. City of Abilene*, 814 F.3d 721, 732–33 (5th Cir. 2016)).  This requires identifying some law that would put the defendant on notice that certain actions were required or forbidden "in the situation presented." *Id.*

Biron has not identified, and cannot identify, any precedent from the Fifth Circuit or the Supreme Court which would have placed the defendants on notice that their actions

at issue in this case—essentially, attempting to block Biron's repeated attempts to communicate with the victim of her own sexual offenses—were unconstitutional. The Fifth Circuit also stresses that a plaintiff must identify some clearly established law arising from sufficiently similar factual circumstances. *See, e.g.*, *Bustillos v. El Paso County Hosp. Dist.*, 891 F.3d 214, 222 (5th Cir. 2018) (explaining that the defendants were entitled to qualified immunity because the plaintiff had "not carried her burden of pointing this panel to any case that shows, *in light of the specific context of this case*, that the [defendants'] conduct violated clearly established law" (emphasis added)); *Vann*, 884 F.3d at 309–10 (explaining, in an excessive force case arising out of a fatal police shooting, that even assuming the police officer's use of force was excessive, he was entitled to qualified immunity because the plaintiff cited "nary a pre-existing or precedential case" showing that it would be a constitutional violation to shoot a suspect "in the situation presented"). In the absence of any such clearly established law, the defendants are entitled to dismissal of all claims against them.

> **2.    Biron fails to state any claim for relief (whether for damages or for declaratory relief); any purported claim for declaratory relief would in any event be moot; and the *Heck* bar also applies.**

Aside from the issue of clearly established law, Biron's pleadings also fail to allege any constitutional violation generally. As Biron's amended complaint and the related records of Biron's prior cases that are subject to judicial notice make clear, Biron: (1) sexually exploited her minor daughter by making her available for sexual relations with strangers on Craigslist; (2) was ordered not to have contact with her daughter and had her parental rights terminated by a New Hampshire court; and (3) was charged with

assorted federal offenses and forbidden by order of the magistrate judge in that case from having any contact with her daughter prior to the resolution of the federal case (which was not finally resolved on appeal until March 2015, *see Biron v. United States*, 135 S. Ct. 1576 (2015)).  Under these circumstances, and for all the reasons explained in the Court's prior order of dismissal, (*see* Doc. 13 at 7–10), Biron's allegations that prison officials attempted to bar her from contacting her victim/daughter and subjected her to disciplinary action when she attempted to evade that restriction fail to state any claim for relief under the First or Fifth Amendment.  (*See* Doc. 13 at 7–8 (explaining that Biron fails to state any First Amendment claim because prison officials "may place restraints on the exchange of non-legal mail between prisoners and outside persons and between prisoners within the prison so long as the restraint is related to a legitimate governmental interest" (citing *Brewer v. Wilkinson*, 3 F.3d 816, 825 (5th Cir. 1993), and *Thornburgh v. Abbott*, 490 U.S. 401, 413–14 (1989))); Doc. 13 at 9–10 (explaining that alleged violations of an inmate's rights in connection with the processing of grievances do not give rise to any Fifth Amendment claim).)

Biron also asserts that, even if a *Bivens* claims for damages is held to be unavailable under the teachings of *Abbasi*, she still has "individual capacity claims for declaratory judgment" that "remain viable."  (Doc. 27 at 2.)  But Biron is wrong about the potential availability of declaratory relief, for several reasons.

First of all, as the Fifth Circuit has made clear, Biron has abandoned any official-capacity claims against the defendants.  Therefore, any claim for declaratory relief would have to be against the defendants in their personal capacities.  However, where Biron is

seeking relief relating to the defendants' actions taken in the course of their government duties as prison officials, no such relief is available in a personal capacity.  *See Feit v. Ward*, 886 F.2d 848, 858 (7th Cir. 1989) (concluding that a plaintiff's "attempt to obtain declaratory and injunctive relief from the defendants in their personal capacities fails to state a claim upon which relief may be granted"); *Thomas v. Matevousian*, No. 1:17-CV-1592, 2018 WL 5099763, at \*5 (E.D. Cal. Oct. 18, 2018) ("Relief under *Bivens* does not encompass injunctive and declaratory relief where the equitable relief sought requires official government action. . . . *Bivens* is both inappropriate and unnecessary for claims seeking solely equitable relief against actions by the federal government." (internal citations omitted)) (magistrate judge's recommendation), *adopted as modified on other grounds*, 2019 WL 266323 (E.D. Cal. Jan. 18, 2019).

Second, Biron's amended complaint establishes that she has been transferred from FMC Carswell and is now incarcerated at a different federal facility in Minnesota.  Any claims that Biron may purport to have for declaratory relief against the defendants in this case—all FMC Carswell officials—were therefore rendered moot by Biron's transfer out of FMC Carswell.  *See Smith v. City of Tupelo*, 281 F. App'x 279, 282 (5th Cir. 2008) ("A claim for declaratory and injunctive relief based on conditions of confinement is rendered moot upon the prisoner's release or transfer from the facility."); *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) (transfer mooted claim for declaratory relief, and "any suggestion of relief based on the possibility of transfer back to the [plaintiff's prior facility of incarceration] is too speculative to warrant relief").

Third, even if personal-capacity declaratory relief were theoretically available, for

all the reasons discussed above, Biron fails to state any claim for relief.

Finally, with respect to all of Biron's claims, (whether for money damages under *Bivens* or for purported declaratory or other non-monetary relief[7]), these claims would not be cognizable in this action even if all of the barriers to suit discussed above did not exist, because *Heck v. Humphrey*, 512 U.S. 477 (1994), would apply to bar Biron's suit. As Biron's allegations and the record of her prior habeas proceedings make clear, Biron is seeking relief based on matters that were the subject of prison disciplinary proceedings against her which resulted in the loss of good-time credit and other sanctions. (*See* Doc. 27.) In *Heck*, the Supreme Court held that a claim that, in effect, attacks a conviction or imprisonment is not cognizable in a civil-rights suit and does not accrue until that conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486–87. This so-called "*Heck* bar" has been extended to prison disciplinary proceedings. *See Edwards v. Balisok*, 520 U.S. 641, 646–48 (1997); *Clarke v. Stadler*, 154 F.3d 186, 190–91 (5th Cir. 1998). Accordingly, because Biron's claims in this suit effectively ask the Court to reconsider the validity of Biron's disciplinary convictions which resulted in a loss of good-time credit and were already litigated (with an outcome against Biron) in Biron's prior habeas actions, *Heck* applies and Biron would not be able to proceed on her claims until she could show that the conditions set forth in *Heck* are satisfied (i.e., that

---

[7] Heck applies to *Bivens* suits and also to claims for declaratory relief. *See Stephenson v. Reno*, 28 F.3d 26, 27–28 (5th Cir. 1994) (*Heck* applies to *Bivens* suits); *Shabazz v. Franklin*, 380 F. Supp. 2d 793, 805 (N.D. Tex. 2005) (*Heck* applies to suits for declaratory and injunctive relief).

her disciplinary convictions have been overturned or invalidated).

## IV.    Conclusion

For all these reasons, the Court should dismiss Biron's amended complaint with

prejudice.

Respectfully submitted,

ERIN NEALY COX
United States Attorney

/s/ Brian W. Stoltz
Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:  214-659-8626
Facsimile:   214-659-8807
brian.stoltz@usdoj.gov

Attorneys for Defendants Upton,
Cimperman, Wenger, Kingsley, and
Smith-Branton

Certificate of Service

On February 5, 2019, I served the foregoing document on plaintiff Lisa Biron by

mailing it to her via prepaid first-class mail, addressed as follows:

Lisa Biron # 12775-049
FCI Waseca
P.O. Box 1731
Waseca, MN 56093

/s/ Brian W. Stoltz
Brian W. Stoltz
Assistant United States Attorney

**Defendants' Motion to Dismiss – Page 25**