UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAY - 9 2019

CLERK, U.S. DISTRICT COURT
By _____
                    Deputy

Lisa Biron,
        Plaintiff                    )
                                     )
                                     )
                                     )
v.                                   )    Civil Action No. 4:15-CV-205-O
                                     )
                                     )
                                     )
Jody Upton, Warden,                  )
FMC-Carswell, et al.,                )
        Defendants                   )
                                     )


## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS


                                Lisa Biron
                                Reg. # 12775-049
                                FCI Waseca
                                P.O. Box 1731
                                Waseca, MN 56093

## Table of Contents

Table of Authorities ........................................ ii

I.   Introduction ........................................... 1

II.  This Court Should Extend Bivens
     Liability ............................................. 1

     A.   Does Congress Really Intend to Protect
          State Inmates But Not Federal Inmates? .......... 1

     B.   Ms. Biron Had No Alternative Process
          Available ....................................... 2

     C.   Obliteration of Bivens Liability is Less
          Costly .......................................... 3

     D.   "Policy Implications" and "Separation-of-
          Powers Principles" Actually Support Expanding
          Bivens Liability Not Denying It ................. 3

III. Qualified Immunity ..................................... 5

     A.   Ms. Biron's Constitutional Rights Are
          Clearly Established ............................. 5

     B.   Reasonable Officials Would Have Known ........... 6

          The Federal Magistrate's January 2013 Pre-Trial
          Detention Hearing Order ......................... 7

          A Confidential, FOIA Exempt N.H. State Juvenile
          Proceeding Document Is Not A No-Contact Order ... 7

IV.  Ms. Biron's Claims Are Not Heck-Barred ................ 10

V.   Declaratory Relief Is Available and Warranted ......... 12

VI.  Conclusion ............................................ 14

Verification and Certification of Service and
Timely Filing ............................................. 15

## Table of Authorities

**Cases**

Ashcroft v. Iqbal,
556 U.S. 622 (2009) ................................. 1

Bell Atl. Corp. v. Twombly,
550 U.S. 544 (2007) ................................. 1

Brewer v. Wilkinson,
3 F.3d 816 (5th Cir. 1993) ........................ 6

Camreta v. Greene,
563 U.S. 692 (2011) ............................... 12, 13

Clarke v. Stalder,
154 F.3d 186 (5th Cir. 1998) ...................... 10, 11, 12

Guajardo v. Estelle,
580 F.2d 748 (5th Cir. 1978) ...................... 6

Harlow v. Fitzgerald,
457 U.S. 800 (1982) ............................... 5

Heck v. Humphrey,
512 U.S. 477 (1994) ............................... 10

Herman v. Holiday,
238 F.3d 660 (5th Cir. 2001) ...................... 14

Hudson v. Palmer,
468 U.S. 517 (1984) ............................... 5

Jones v. Diamond,
594 F.2d 997 (5th Cir. 1979) ...................... 6

Logan v. Hollier,
711 F.2d 690 (5th Cir. 1983) ...................... 6

McLin v. Ard,
866 F.3d 682 (5th Cir. 2017) ...................... 1

Meyer v. Nebraska,
262 U.S. 390 (1923) ............................... 6

Pell v. Procunier,
    417 U.S. 817 (1974) .............................. 5

Presier v. Rodriguiz,
    411 U.S. 475 (1973) .............................. 10

Quilloin v. Walcott,
    434 U.S. 246 (1978) .............................. 5

Sanford v. Dretke,
    562 F.3d 674 (5th Cir. 2009) .................... 6

Skinner v. Oklahoma,
    316 U.S. 535 (1942) .............................. 6

Smith v. City of Tupelo,
    281 F. App'x 279 (5th Cir. 2008) ................ 14

Troxel v. Granville,
    530 U.S. 57 (2000) ............................... 5

Turner v. Safley,
    482 U.S. 78 (1987) ............................... 6

United States v. Collins,
    642 F.3d 654 (8th Cir. 2011) .................... 4

**Statutes & Rules**

28 U.S.C. § 636 ................................... 7
N.H.R.S.A. 169-C .................................. 9
Fed. R. Civ. P. 12(b)(6) ......................... 1

ii

## I.  Introduction

Defendants have filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'."  Ashcroft v. Iqbal, 556 U.S. 622, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In reviewing the complaint, this Court must draw all inferences in favor of Ms. Biron, and view all facts and inferences in the light most favorable to her.  See McLin v. Ard, 866 F.3d 682, 688 (5th Cir. 2017).

For the reasons that follow, Defendants' motion should be denied.

## II.  This Court Should Extend Bivens Liability

Ms. Biron was directed by the Court to submit her argument in support of her Bivens claims with her amended complaint, which she has done. Most of Defendants' arguments against extending Bivens are fully addressed therein.  Ms. Biron, therefore, hereby incorporates by reference (and re-submits as Exhibit 1) her entire Memorandum in Support of Extending Bivens Liability.  She respectfully asks the Court to read it now.  She addresses some of the specifics of Defendants' argument as follows.

### A.  Does Congress Really Intend to Protect State Inmates But Not Federal Inmates?

Failure to extend Bivens in the federal prison context leaves federal inmates at the mercy of BOP employees with no protection against their jailers except for injunctive relief.  A claim for injunctive relief is often mooted by transfer of the inmate at the will of these same federal jailers, and, therefore, does not curb abuses like individual liability

1

for damages.  Contrast this with the protection granted to state inmates via the threat of individual liability under § 1983.  Defendants argue this disparity in judicial protection available to state versus federal inmates is intentional.  This seems, simply, incredible.

specifically, Defendants argue that Congress' failure to legislate a damages remedy when it enacted the Prison Litigation Reform Act ("PLRA") in 1995 suggests that it did not intend one.  But Congress was aware that federal courts had been implying _Bivens_-type actions since _Bivens_ was decided in 1971.  If Congress had disapproved of the federal courts implying a damages remedy derived directly from the U.S. Constitution, it could have affirmatively divested the courts of jurisdiction when it enacted the PLRA.  It did not.  Thus, it is more likely that Congress approved of _Bivens_-damages actions, and did not find it necessary to legislate a standalone damages remedy in this area.

B.  Ms. Biron Had No Alternative Process Available

The Defendants suggest a _Bivens_ action should not lie because Ms. Biron had "ample opportunity" to challenge any no-contact orders or orders terminating her parental rights in the New Hampshire juvenile court proceeding, or in her criminal case — e.g., the magistrate judge's pretrial order.  Not so.  First, as previously explained by Ms. Biron in her appellant's reply brief and, again, in her motion to strike and for appointment of counsel, Ms. Biron's parental rights were not terminated and no termination proceedings were initiated against her.  The goal of the juvenile state proceeding was reunification not termination.[1]

---

1 Defendants have never before suggested that Ms. Biron's parental rights were terminated, likely because they were not.  This false claim originated in the appellees response brief filed by AUSA Brian Stoltz long before the Carswell defendants were served.  Ms. Biron corrected this misinformation in her appellant's reply brief.

Second, the contact terms in the juvenile case allowed contact and visitation at the discretion of a DCYF social worker, and were virtually irrelevant at the time of that proceeding because of the federal magistrate judge's pre-trial no-contact order in place during the criminal trial, and were mooted entirely by July 2013 when R.B. (Ms. Biron's daughter) was permanently placed with her father. Similarly, the magistrate's pre-trial order—assuming it was valid at the time[2]—expired upon sentencing, on May 23, 2013, or on May 28, 2013 when the notice of appeal ("NOA") was filed divesting the trial court of jurisdiction. Clearly, Ms. Biron had no reason to challenge any "orders" at the time, and could never have imagined that federal officials (including AUSAs) would use orders from these proceedings to later on invent a no-contact order.

C.  Obliteration of Bivens Liability is Less Costly

Defendants suggest that recognizing a Bivens remedy for federal inmates would be burdensome and costly to the government and its employees because there are more than 180,000 federal inmates and nearly 36,000 BOP employees. Ms. Biron agrees. It would be less burdensome and less costly to allow BOP jailers the unfettered freedom to violate federal inmates' constitutional rights with impunity and immunity from the threat of any personal civil liability, to only allow claims for injunctive relief which are mooted by inmate-transfers at the will of these same jailers, which is precisely what was done to Ms. Biron, thus enabling jailer malfeasance to go unpunished and to perpetuate unhindered.

D.  "Policy Implications" and "Separation-of-Powers Principles" Actually Support Expanding Bivens Liability Not Denying It

---

2  See infra, sect. III, B.

As explained in Ms. Biron's Bivens memorandum, the various U.S. District Courts' trend of refusing to extend Bivens liability because they find the BOP administrative remedy ("AR") program is an alternative remedy is irresponsible and disturbing. If these district courts actually believe that this program is in any way an honest, fair, or just remedial system, they are not informed of the facts. The BOP's AR program is a three-level farce that must be completed before seeking the help and protection of a federal district court.

Moreover, faith in the Attorney General and prison administrators' "expertise" is misplaced. (See Mot. to Dis., 18.) In Ms. Biron's case, New Hampshire AUSAs Helen Fitzgibbon and Donald Feith lied to the BOP about the validity of a federal magistrate's pre-trial order. This false and unethical claim caused the BOP to begin to block Ms. Biron's contact with her daughter. Ms. Biron brought several appeals through the BOP's AR program, to no avail. The BOP continued to bar Ms. Biron's contact with her daughter on the basis of the AUSA-invented no-contact order, presumably at the behest of these NH AUSAs.

Presently, in his motion to dismiss, AUSA Brian Stoltz has misclassified/misdiagnosed Ms. Biron as a "sexual predator"[3] (see Mot. to Dis., 18) and suggests his libelous and unsupported diagnosis counsels against expanding Bivens liability. Further, he has misrepresented to this Court and to the Fifth Circuit that Ms. Biron's parental rights were terminated

---

3  It is unclear where Attorney Stolz gleaned the training to qualify him to make such a classification. To Ms. Biron's knowledge, Attoney Stoltz came to this criminal classification/diagnosis independent of the actual Carswell Defendants or anyone involved in the criminal case or the state juvenile proceeding. Courts have generally sustained objections and stricken from the record such unsupported and derogatory statements when made by prosecutors. See United States v. Collins, 642 F.3d 654, 657 (8th Cir. 2011).

when they were not, that a FOIA-Exempt confidential document is a no-contact order, and he zealously fights to ensure that Ms. Biron and her daughter are never reconciled despite mental health expert Dr. Thomas Burns' recommendation to the contrary.  (March 2013 Psych. Eval. filed in case no. 12-CR-140-01-PB.)

In sum, this is the Executive Branch run amok.  Ms. Biron and federal inmates in general desperately need the federal judiciary to protect them from these people's "expertise." For all of these reasons and those set forth in Ms. Biron's Bivens memorandum, this Court should extend Bivens liability in this case.

### III.  Qualified Immunity

A.  Ms. Biron's Constitutional Rights Are Clearly Established

The Defendants are not insulated from civil liability by qualified immunity because they have "violate[d] clearly established ... constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

As this Court noted in its dismissal, Ms. Biron maintains a First Amendment right of speech which is "'not inconsistent with [her] status as ... [a] prisoner or with the legitimate penological objectives of the correctional system.'" Hudson v. Palmer, 468 U.S. 517, 523 (1984) (quoting Pell v. Procunier, 417 U.S. 817, 822 (1974)).  Likewise, Ms. Biron has a Fifth Amendment Due Process right against government interference with her familial relationship with her daughter.  See Troxel v. Granville, 147 L. Ed. 2d 49, 56, 530 U.S. 57, ___ (2000).  "[The Supreme Court has] recognized on numerous occasions that the relationship between parent and child is constitutionally protected." Troxel, 147 L. Ed. 2d at 57 (quoting Quilloin v. Walcott, 434 U.S. 246, 255 (1978)).

It is indisputable that the United States Constitution "protects the family and basic familial relationships and practices." Logan v. Hollier, 711 F.2d 690, 691 (5th Cir. 1983); see Skinner v. Oklahoma, 316 U.S. 535, 541 (1942); Meyer v. Nebraska, 262 U.S. 390, 399 (1923).

In its original order of dismissal, this Court cited several cases where appellate courts upheld a BOP-restriction on contact when "those on the outside . . . affirmatively indicate that they do not wish to receive correspondence from a particular prisoner." Jones v. Diamond, 594 F.2d 997, 1014 (5th Cir. 1979) (emphasis added). Likewise, the Fifth Circuit has upheld particular restrictions limiting an inmate's right to make contact with a crime victim who has requested no contact. See Sanford v. Dretke, 562 F.3d 674, 678-82 (5th Cir. 2009) (employing Turner v. Safley, 482 U.S. 78, 87-89 (1987) legitimate government interest factor test) (emphasis added); Guajardo v. Estelle, 580 F.2d 748, 753 (5th Cir. 1978) (affirming the district court's determination that a negative mail list does not violate prisoner's First Amendment rights and stating that such lists "permit [prison officials] to deny inmates permission to correspond with persons who have objected to further correspondence") (emphasis added); see also Brewer v. Wilkinson, 3 F.3d 816, 824 (5th Cir. 1993).

B.  Reasonable Officials Would Have Known

In the present case, Ms. Biron's daughter (and her father) did not affirmatively request a bar to contact between Ms. Biron and her daughter. Absent such an affirmative indication, the aforementioned Supreme Court and Fifth Circuit cases clearly establish Ms. Biron's constitutional right to contact with her daughter. Further, no court-ordered bar to contact existed, and the Defendants' reliance on a non-existent no-contact order to justify their actions is unreasonable and does not immunize them from liability.

6

## The Federal Magistrate's January 2013
## Pre-Trial Detention Hearing Order

Since 2014, the Defendants have unjustifiably relied on federal
magistrate judge Landya McCafferty's January 3, 2013 pre-trial deten-
tion hearing order to bar Ms. Biron's contact with her daughter.
The "Order" stated that "Defendant shall have no contact (either
direct or indirect) with the minor victim between now and the resolu-
tion of this case."

The district court case ended at sentencing on May 23, 2013,
and the district court no longer had jurisdiction on May 28, 2013 when
Ms. Biron filed her notice of appeal ("NOA"). Between January 3, 2013
and May 28, 2013, Ms. Biron did not contact or attempt to contact her
daughter, despite the highly questionable validity of this order.

The order was questionable because a magistrate judge's authority
is limited and specifically delegated by statute. She is not an Article
III judge, and she may not grant injunctive relief. See 28 U.S.C. § 636
(b)(1)(A). According to statute, a magistrate may impose restrictions
on contact against a criminal defendant as a condition of release; but
Ms. Biron was detained. Magistrate McCafferty alluded to her lack of
authority to make this order in her rhetorical question to U.S. Attorney
Kacavas' request for a no-contact order by stating in open court, "can I
do that?" Nevertheless, she made the order, and Ms. Biron did not attempt
to contact her daughter until long after the jurisdiction of the district
court divested.

## A Confidential, FOIA-Exempt N.H. State Juvenile
## Proceeding Document Is Not A No-Contact Order

Somehow the BOP obtained copies of confidential FOIA-Exempt filings

from a N.H. juvenile dispositional proceeding.  These filings were obtained as early as October 2013 when Ms. Biron was confined at FCI-Danbury, CT. The FMC Carswell, TX Defendants in this case, however, have never alluded to this document as justification for their interference with Ms. Biron's contact with her daughter.

These confidential papers were first publicized by AUSA Angie Henson in the appendix to her Response in Opposition to Petition for Writ of Habeas Corpus.  (See Habeas Case 4:14-CV-823-O DOC 19 at 006-012;[4] 036-042.)

In ruling on this habeas case, the court quoted from this December 2012 document in its opinion.  The quoted language, which included bail conditions from a nolle prossed case, was not essential to the court's order that dismissed Ms. Biron's claims for failure to exhaust administrative remedies (despite proven machination[5] by the BOP) and upheld one DHO conviction finding "some evidence" (all that is required to satisfy due process) that Ms. Biron wrote a letter in code.[6]  No finding was made by the habeas court that the language it quoted from the confidential juvenile case document was a no-contact order, nor was such a finding required to uphold the DHO conviction for writing a letter in code.  This is because a DHO conviction for writing a letter in code does not require

---

4  The "FOIA-Exempt" stamp is barely visible on each page of this 7-page document, and appears to be partially obscured on purpose.
5  Ms. Biron provided proof that her AR requests were rejected wrongfully as not being written in English when they were neatly typed in English.
6  Ms. Biron has explained, ad nauseum, that her reference to her daughter as "cousin Erin" in the letter was an inside joke between herself and her POA.  The Defendants, via counsel, argue that this reference was intended to hide her daughter's identity because Ms. Biron knew there was a no-contact order.  This argument is absurd.  Ms. Biron's message to her only child mentioned the family dog and her daughter's two schools by name, asked how her dad was doing, and is signed, "love mommy."

the existence of a no-contact order.

Indeed, had the habeas court found this December 2012 document to be a no-contact order, its finding would be erroneous as a matter of law. First, had the N.H. state court ordered "no-contact", it would be reflected at page 5, part II, section C of the document. (See Habeas Case no. 4:14-CV-823-O DOC 19 at 10.) This section is captioned "Orders of Protection" and specifically requires that an Order of Protection form, NHJB-2255-DF, be completed to effectuate such an order. This section is blank.

Second, New Hampshire Revised Statutes Annotated, Chapter 169-C, Child Protection Act (§§ 169-C:1− 169-C:40) governs the proceedings in which this December 2012 document was filed. Under New Hampshire law, if a N.H. court enters an order of protection in one of these proceedings:

> a copy of each protective order issued . . . shall
> be transmitted to the administrative office of the
> courts electronically or by facsimile. The adminis-
> trative office of the courts shall enter information
> regarding the protective order into the state data-
> base, which shall be made available to the police and
> sheriffs' departments statewide. It shall also up-
> date the database upon expiration or termination of
> the order.

N.H.R.S.A. 169-C:19, II-a.

A protective/no-contact order has never issued against Ms. Biron in the State of New Hampshire (or in any state). As stated above, the December 2012 document's "Protective Order" section is blank and Ms. Biron provided proof from the N.H. administrative office of the court that no record of any such order exists. (See Exh. 1 of Ver. First Amend. Comp.) To suggest that qualified immunity protects a federal BOP official who did not check with the N.H. State Police and did not run an NCIC check for verification of this wrongfully obtained  FOIA-Exempt document that they are now calling a no-contact order is completely unreasonable, and is presumably why the Carswell Defendants (before present counsel's in-

volvement) have never made such a claim.

Regardless, the language that does appear in this December 2012 document plainly allows contact and supervised visitation at the discretion of a DCYF-social worker and therapist, and was moot in July 2013 when R.B. was permanently placed with her father, long before the events giving rise to this lawsuit occurred.

In sum, absent a no-contact order, and absent an affirmative request from Michael Biron (or R.B.) to bar contact, and absent a realistic threat to the safety and security of the institution, Ms. Biron had (and has) a constitutional right to contact and reconcile with her daughter.[7]

### IV.   Ms. Biron's Claims Are Not Heck-Barred

Ms. Biron's claims for damages are not barred by Heck because a successful judgment in this case will not effect the length of her sentence.

"A prisoner cannot, in a [civil rights] action, challenge the fact or duration of [her] confinement or recover good-time credits lost in a prison disciplinary proceeding." Clarke v. Stalder, 154 F.3d 186, 189 (5th Cir. 1998) (citing Preiser v. Rodriguez, 411 U.S. 475, 478 (1973). In Heck v. Humphrey, 512 U.S. 477, 486-87 (1994), the Supreme Court held that an inmate cannot bring a civil rights action for damages (rather than for the recovery of good-time credits) if a favorable judgment would

---

7   Indeed, contact and reconciliation was recommended by Psychologist Thomas Burns, PhD as early as March 2013.  Federal prison employees (and AUSAs) are not trained or qualified to make such determinations, and should not be allowed to terminate, sua sponte, a parent-child relationship as they have in this case.  See supra, 3-4, 4 n.3, discussing opposing counsel's and other AUSAs apparent zeal in preventing family reconciliation.

necessarily imply the invalidity of the inmate's conviction or the dura-
tion of his sentence, unless the inmate can prove the "conviction" has
been invalidated. "A 'conviction', for purposes of <u>Heck</u>, includes a rul-
ing in a prison disciplinary proceeding <u>that results in a change to the</u>
<u>prisoner's sentence</u>, including loss of good-time credits." <u>Clarke</u>, 154
F.3d at 189 (emphasis added).

In <u>Clarke</u>, the Fifth Circuit considered an inmate's constitutional
challenge to a prison rule prohibiting inmates from threatening prison
employees with legal redress during "confrontation situations." <u>Id.</u> at
188. Clarke was disciplined and lost good-conduct time for violating
the rule. The court noted that the relief at issue—invalidating the
prison rule as unconstitutional— was "so intertwined with his request
for damages and reinstatement of his lost good-time credits that a favor-
able ruling on the former would 'necessarily imply' the invalidity of
his loss of good-time credits." <u>Id.</u>

In Ms. Biron's case, the length of her prison sentence will not
be effected by this Court finding that the Defendants violated her right
to contact her daughter. This is because none of Ms. Biron's disciplin-
ary convictions required finding a bar to contact. Initially, the July
2014 DHO conviction relied on the existence of the magistrate's pre-trial
no-contact order. Ms. Biron appealed via the BOP's AR program. Rehear-
ing was held[8], the conviction overturned and a new conviction entered
(in November 2014) for circumvention of mail monitoring that was not based
on the magistrate's order. The other DHO convictions were for writing in

---

8 Although Ms. Biron was informed in the AR response that a rehearing
would be occurring, she was not allowed to attend to defend herself against
the new finding that she circumvented mail monitoring via third-party mail.

code and third-party circumvention of mail monitoring, not for violating a no-contact order.

Further, the present claims against the Defendants for interferring with Ms. Biron's contact with her daughter by causing or imposing Unit Disciplinary Committee ("UDC") sanctions are <u>not</u> "convictions" for purposes of <u>Heck</u>. They are not "convictions" because they did not (and can never) result in the loss of good-time credits[9] and, thus, do not effect the length of her sentence. <u>See Clarke</u>, 154 F.3d at 189. Ms. Biron does not challenge the relatively minor sanctions which resulted from these UDC hearings as they have long since expired;  she challenges the resulting constitutional violations of her First and Fifth Amendment rights to contact and reconcile with her daughter.[10]

In sum, for the foregoing reasons, none of Ms. Biron's claims for damages and declaratory relief are barred by <u>Heck</u>.

### V.  Declaratory Relief is Available and Warranted

If this Court finds the Defendants immuned from damages, or fails to extend <u>Bivens</u> liability, declaratory judgment is available, warranted and necessary to stop the same continuing constitutional rights violations against Ms. Biron that are presently occurring at the hands of other BOP officials.

In <u>Camreta v. Greene</u>, 563 U.S. 692, 179 L. Ed. 2d 1118, 1128-29 (2011), the Supreme Court heard an appeal by a winning party who had won final judgment below on the grounds of qualified immunity but was, never-

---

9  Good-conduct time sanctions may only be levied by a Disciplinary Hearing officer after a DHO hearing.
10  Ms. Biron's daughter is twenty-one years old today (5/4/19) and has expressed her desire to visit Ms. Biron.  Following in the steps of the Carswell Defendants, FCI-Waseca officials refuse to allow this.

theless, found to have violated the plaintiff's constitutional rights.
Id. at 1128. Such an outcome—a win only because of immunity—, in es-
sence, finds that "Although this official is immune from damages today,
what he did violates the Constitution and he or anyone else who does that
thing again will be personally liable." Id. (emphasis added).

The Supreme Court gave the following example:

> Consider a plausible but unsettled constitution-
> al claim asserted against a government official
> in a suit for money damages. The court does not
> resolve the claim because the official has im-
> munity. He thus persists in the challenged prac-
> tice; he knows that he can avoid liability in
> any future damages action, because the law has
> still not been clearly established. Another
> plaintiff brings suit, and another court both
> awards immunity and bypasses the claim. And
> again, and again, and again. So the moment of
> decision does not arrive. Courts fail to clar-
> ify uncertain questions, fail to address novel
> claims, fail to give guidance to officials about
> how to comply with legal requirements. Quali-
> fied immunity thus may frustrate "the develop-
> ment of constitutional precedent" and the pro-
> motion of law abiding behavior.

Id. at 1132. While the Supreme Court offered this example to explain
why it had jurisdiction to decide an appeal brought by the winner, the
same logic applies in the present case and urges this Court to determine
and declare that the Defendants, even if immuned from damages, have vio-
lated Ms. Biron's constitutional right to communicate with her daughter.
To dismiss the case at this point, without deciding the constitutional
question, will waste valuable and scarce judicial resources. It will
require Ms. Biron to bring another lawsuit against BOP officials at her
new location because FCI-Waseca, MN staff are acting in accord with the
Carswell Defendants, continuing to violate Ms. Biron's and her adult
daughter's right to communicate with each other.

13

In arguing mootness, the Defendants fail to acknowledge that the federal Bureau of Prisons is a single agency. They cite to inapplicable cases where the problems the inmate-plaintiff complained of were unique to his location and where the transfer of the inmate remedied his complaints. See Smith v. City of Tupelo, 281 F. App'x 279, 282 (5th Cir. 2008) (a claim for injunctive relief from physical conditions at county jail mooted by plaintiff's release); Herman v. Holiday, 238 F.3d 660, 665 (5th Cir. 2001) (transfer mooted claim for relief from deplorable conditions at a transfer center).

In contrast, Ms. Biron's claims are ongoing within the federal Bureau of Prisons—a single federal agency. And while injunctive relief is no longer available, due to transfer or evisceration of her official capacity claims by the Fifth Circuit[11], declaratory judgment against the individual Carswell Defendants will settle the matter and will absolutely stop the BOP staff in Minnesota from continuing to violate the Constitution.

## VI.  Conclusion

This Court should recognize the error in the other district courts' decision to deny a Bivens remedy to federal inmates, and extend Bivens to allow Ms. Biron's claims for damages. Further, this Court should deny the Defendants' defense of qualified immunity as Ms. Biron has identified a clearly established right to communicate with her daughter. In addition, her claims are not Heck-barred or moot, and her claim for declaratory relief is viable and will stop BOP staff from violating the Constitution in Minnesota.

---

11 How these claims were dismissed is a mystery as Ms. Biron was careful to restate every claim in her appellate brief in order to preserve them on remand.

WHEREFORE, Ms. Biron respectfully requests this Honorable Court deny the Defendants' motion to dismiss, and grant such other relief as is just and equitable.

Respectfully submitted

5/4/2019
Date

*Lisa Biron*

Lisa Biron (12775-049)
FCI Waseca
P.O. Box 1731
Waseca, MN 56093

## Verification and Certification of Service and Timely Filing

I hereby swear, under penalty of perjury, that any facts stated in the foregoing response are true, and that this response was mailed to the Court via Certified Mail on this date. I further certify that a copy of this response was mailed this date to AUSA Brian Stoltz.

5/6/2019
Date

*Lisa Biron*

Lisa Biron



UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

Lisa A. Biron,        )
     Plaintiff      )
                    )
                    )
v.                 )     Civil Action No. 4:15-CV-205-O
                    )
                    )
Jody Upton, et al,    )
     Defendants    )
                    )
                    )

## Memorandum in Support of Extending Bivens Liability

I.   Introduction

    Ms. Biron posits that a Bivens remedy is available for violations
of her First and Fifth Amendment rights in this case.  Ms. Biron has brought
several claims against various Federal Bureau of Prisons ("FBOP") employe-
ees in their individual capacities.  Her First Amendment claims assert
that these federal actors have barred her contact with various family mem-
bers without a legitimate penalogical purpose.  Her Fifth Amendment claims
assert that these same actions violate her due process right to be free
from governmental interference in her familial relationships.  She seeks
damages under Bivens v. Six Unknown Named Agents of Fed. Bureau of Narco-
tics, 403 U.S. 388 (1971).

II.  Law and Argument

    "The purpose of Bivens is to deter federal officers from committing
constitutional violations." Butts v. Martin, 877 F.3d 571, 587 (5th Cir.

2017), quoting Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 66 (2001). Bivens implied a damages remedy against federal agents for violations of the Fourth Amendment prohibition against unreasonable searches and seizures.  See Butts, 877 F.3d at 587, citing Bivens, 403 U.S. at 397. A Bivens remedy, however, is not available for all constitutional violations and its expansion is "a disfavored judicial activity." Butts, 877 F.3d at 587, quoting Ziglar v. Abbasi, 137 S. Ct. 1843, 1857 (2017).

Bivens has been extended beyond the deprivation of Fourth Amendment rights by the Supreme Court on two occasions: for violations of the Fifth Amendment Due Process Clause for sex discrimination of a federal employee by her congressman-employer, see Davis v. Passman, 442 U.S. 228 (1979), and for violations of the Eighth Amendment for prison officials' failure to treat an inmate's asthma.  See Carlson v. Green, 446 U.S. 228 (1980).

To determine whether a Bivens remedy is available to Ms. Biron, the "Court[] must first assess whether [her] claim[s] present[] a new Bivens context." Butts, 877 F.3d at 587, citing Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009). "If so, there are two circumstances where Bivens does not recognize an implied cause of action for constitutional violations. First, Bivens claims are unavailable 'if there are special factors counselling hesitation in the absence of affirmative action by Congress'." Butts, 877 F.3d at 587, quoting Abbasi, 137 S. Ct. at 1857 (internal citation omitted). "Second, Bivens remedies may be foreclosed by congressional action where an 'alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages'." Butts, 877 F.3d

2

at 587, quoting <u>Wilkie v. Robbins</u>, 551 U.S. 537, 550 (2007).  The Fifth
Circuit has "recognized that 'a <u>Bivens</u> action is analogous to an action
under § 1983—the only difference being that § 1983 applies to constitu-
tional violations by state, rather than federal, officials'." <u>Butts</u>,
877 F.3d at 588, quoting <u>Evans v. Ball</u>, 168 F.3d 856, 863 n.10 (5th Cir.
1999), <u>abrogated on other grounds by</u> <u>Castellano v. Fragozo</u>, 352 F.3d
939 (5th Cir. 2003).  The Fifth Circuit "does not distinguish between
<u>Bivens</u> claims and § 1983 claims." <u>Butts</u>, 877 F.3d at 588 (internal quot-
ations omitted).

<u>New Context</u>

Ms. Biron acknowledges that her claims present a new context as they
are meaningfully different than any previous <u>Bivens</u> cases decided by the
Supreme Court. <u>See</u> <u>Abbasi</u>, 137 S. Ct. at 1859.  The Supreme Court has
never recognized a First Amendment <u>Bivens</u> claim, <u>see</u> <u>Bush v. Lucas</u>, 462
U.S. 367 (1983)(declining to extend <u>Bivens</u> to First Amendment retaliation
claim against a federal employer because Congress provided a comprehensive
remedial scheme); <u>Wood v. Moss</u>, 134 S. Ct. 2056 (2014)(assuming but not
deciding that <u>Bivens</u> extends to First Amendment claim); <u>Iqbal</u>, 556 U.S.
662 (same); <u>but see</u> <u>Vegas v. United States</u>, 881 F.3d 1146 (9th Cir. 2018)
(noting that Ninth Circuit allows a <u>Bivens</u>-type action directly under the
First Amendment); <u>Bistrain v. Levi</u>, 696 F.3d 352, 376 n.9 (3d Cir. 2012)
("Our Court, however, relying on <u>Bivens</u>, has held that a federal cause
of action for damages may be implied directly from the [F]irst [A]mend-
ment."); and, as stated <u>supra</u>, its Fifth Amendment <u>Bivens</u> case arose in
a federal employment sex discrimination case, <u>see</u> <u>Davis</u>, 442 U.S. 228,
which bears no resemblance to Ms. Biron's case.

3

While Ms. Biron's claims present a new context for <u>Bivens</u>, there are
no special factors to prevent extending an implied cause of action to her
claims.

### Special Factors/Alternate Remedies

In the present case, there are no special factors counselling hesita-
tion in the absence of affirmative action by Congress. See <u>Butts</u>, 877
F.3d at 587. Ms. Biron's case is a mine-run case concerning the viola-
tion of prisoner civil rights by federal prison officials. It bears no
resemblance to any cases that have refused to extend <u>Bivens</u> under a spec-
ial factors analysis.

In <u>Abbasi</u>, illegal aliens, detained for investigation in the wake
of the September 11 terrorist attacks, brought various constitutional
claims and challenges to the detention policy against three high-level
executive officers in the Department of Justice and two Wardens of MDC
Brooklyn. 137 S. Ct. at 1860.

In analysing whether to extend <u>Bivens</u> to this new context, the Supreme
Court "noted that a <u>Bivens</u> action is 'not a proper vehicle for altering an
entity's policy'." <u>Id.</u> Even if the action were confined to an individ-
ual policy maker (i.e., a particular executive officer), the claims would
require an examination into the confidential or sensitive discussions
and deliberations that led to the policies and governmental acts being
challenged. <u>Id.</u> The Court noted that this might impede the Executive
Branch from performance of its constitutional duties. <u>Id.</u> at 1860-61.
Further, the Court noted that the detention policies at issue involved
"more than standard law enforcement operations" and challenged "major ele-
ments of the Government's whole response to the September 11 attacks"

4

which involve matters of national security.  Id. at 1861.

The Court concluded that, in regard to the challenges to the deten-
tion policy, these special factors counselled that "whether a damages
action should be allowed is a decision for the Congress to make not the
courts."  Id. at 1860.  Interestingly, the Court remanded  the case for
the Second Circuit to conduct in the first instance a special factors an-
alysis in regard to the Fifth Amendment prisoner abuse claims against
the two Wardens.  Id. at 1865.

Similarly, the Supreme Court remanded Hernandez v. Mesa, 137 S. Ct.
2003 (2017) to the Fifth Circuit to determine whether a Bivens remedy
was available.  The plaintiffs claimed that United States Customs and
Border Patrol Agent Mesa violated the Fourth and Fifth Amendments by shoot-
ing across the international border into Mexico and killing an unarmed
15 year-old Mexican boy.  Hernandez v. Mesa, 885 F.3d 811, 814-15 (5th
Cir. 2018)(en banc).

Finding the claims presented a new context, the Circuit Court con-
ducted a special factors analysis and found several of them.  First, it
found that this potential extension of Bivens "threaten[ed] the political
branches' supervision of national security."  Id. at 818.  It noted "the
Supreme Court has never implied a Bivens remedy in a case involving the
military, national security, or intelligence."  Id. at 818-19, quoting
Doe v. Rumsfeld, 683 F.3d 390, 394 (D.C. Cir. 2012); see Abbasi, 137 S. Ct.
at 1861 ("National security is the prerogative of the Congress and the
President.").  The threat of Bivens liability, it noted, "could undermine
the Border Patrol's ability to perform duties essential to national sec-
urity."  Id. at 819; see also Vanderklok v. United States, 868 F.3d 189,
207-09 (3d Cir. 2017)(denying Bivens remedy in the context of airport

security against TSA agent for alleged constitutional violations). The
Court noted that allowing a <u>Bivens</u> claim in this context risked interfer-
ence with foreign affairs and diplomacy. <u>Id.</u> at 819.

In the present case, Ms. Biron's claims do not involve any of the
"special factors" set forth above. She does not seek to challenge an
FBOP policy like the plaintiffs in <u>Abbasi</u>, nor is she suing high-level
Executive Branch decision-makers. Her claims, likewise, do not involve
matters of national security or foreign affairs and diplomacy.

Moreover, a <u>Bivens</u> remedy is not foreclosed by Congress because there
is no "alternative, existing process for protecting [Ms. Biron's interest
that] amounts to a convincing reason for the Judicial Branch to refrain
from providing a new and freestanding remedy in damages." <u>See</u> <u>Butts</u>,
877 F.3d at 587.

Presently, the only Supreme Court holdings to deny <u>Bivens</u> remedies
to ordinary federal inmates are easily distinguishable from Ms. Biron's
circumstances.

In <u>Malesko</u>, the Supreme Court declined to allow a claim for damages
under <u>Bivens</u> brought by a federal inmate against a private corporation
operating as a halfway house under contract with the FBOP. 534 U.S 61.
The Court noted that the question of whether a <u>Bivens</u> remedy might lie
against a private <u>individual</u> was not presented, and that the purpose of
<u>Bivens</u> is to deter individuals. <u>Id.</u> at 70. Therefore, if a <u>Bivens</u> act-
ion were allowed against a corporate defendant "[t]he deterrent effects
of the <u>Bivens</u> remedy would be lost." <u>Id.</u> at 70-71. The Court stated

> There is no reason for us to consider extend-
> ing <u>Bivens</u> beyond its core premise here. To
> begin with, no federal prisoners enjoy respond-
> ent's contemplated remedy. <u>If a federal prison-</u>
> <u>er in a BOP facility alleges a constitutional</u>

> deprivation, he may bring a Bivens claim
> against the offending individual officer . . . .[1]
> The prisoner may not bring a Bivens claim
> against the officer's employer, the United States,
> or the BOP.

Id. at 71-72 (emphasis added).

In Minneci v. Pollard, 565 U.S. 118 (2012), a federal inmate brought an action against prison employees in a privately operated federal prison alleging the deprivation of adequate medical care. The Supreme Court held that there was no Bivens implied cause of action under the Eighth Amendment because of existing state law remedies. Id. at 124. The Court explained that

> [The inmate's] Eighth Amendment claim focuses
> on a kind of conduct that typically falls within
> the scope of traditional state tort law. And
> in the case of a privately employed defendant,
> state tort law provides an "alternate, existing
> process" capable of protecting the constitution-
> al interests at stake.

Id. at 125, quoting Wilkie, 551 U.S. at 550; see also Vegas, 881 F.3d 1146 (no Bivens remedy against private non-profit residential reentry center because of adequate state law claims).

Malesko and Minneci are easily distinguished from Ms. Biron's case. Ms. Biron is not suing the United States, the FBOP, private actors, or a private corporation. Her Bivens claims are against individual FBOP officials for constitutional violations. Further, the Supreme Court it-self has stated that a Bivens claim would lie in her situation. See supra n.1.

---

1 It bears noting (and repeating) that, although this language might be con-sidered dicta, the Supreme Court stated, "[A] federal prisoner in a BOP facility . . . may bring a Bivens claim against the offending individual officer." Malesko, 534 U.S. at 72.

Ms. Biron acknowledges the trend occurring in the various district courts denying the extension of Bivens claims to federal inmates because of the "alternate remedies" that are available. In Akande v. Philips, no. 1:17-CV-01243 EAW, 2018 U.S. Dist. LEXIS 118212 (W.D.N.Y. July 11, 2018), the court, declining to decide whether a Bivens claim was available at the PLRA-screening stage, nevertheless discussed and collected cases which have denied Bivens First Amendment relief because the inmate-plaintiff had alternative remedies including the FBOP administrative grievance process, a federal tort claims action, the filing of habeas corpus, or injunctive relief. Ms. Biron posits that this analysis is deeply flawed and that none of these remedies foreclose an action under Bivens.

As stated, "Bivens remedies may be foreclosed by Congressional action where an 'alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages'." Butts, 877 F.3d at 587, quoting Wilkie, 551 U.S. at 550 (emphasis added).

In Malesko, the Supreme Court stated that it "inferred a [Bivens] right of action against individual prison officials where the plaintiff's only alternative was a Federal Tort Claims Act ("FTCA") claim against the United States." 534 U.S. at 67-68, quoting Carlson, 446 U.S. at 18-23. "We also found it 'crystal clear' that Congress intended the FTCA and Bivens to serve as 'parallel' and 'complementary' sources of liability." Id. Clearly, the availability of a FTCA claim does not foreclose a Bivens remedy.

Similarly, in Malesko, the Court explained that "the purpose of Bivens is to deter individual federal officers from committing constitutional violations." 534 U.S. at 70. The Court "made clear that the threat

of litigation and liability will adequately deter federal officers . . . . Id., quoting FDIC v. Myers, 510 U.S. 471, 474 (1994). Given the Supreme Court's clear explanation of the purpose of the Bivens doctrine, it does not follow that a claim for injunctive relief is the type of "alternative remedy" envisioned by the Court. This is especially true in light of the FBOP's questionable practice of transferring an inmate-plaintiff against her will to a new location after a law suit is filed or upon learning that filing is imminent.

Likewise, habeas corpus is not an alternate remedy to bar a Bivens claim. It is well settled that a habeas petition is not an appropriate means to attack unconstitutional conditions of confinement and prison procedures, but is the means to seek relief from custody. See Carson v. Johnson, 112 F.3d 818, 820-21 (5th Cir. 1997). Certainly Ms. Biron's claims in the present case are not challengeable in a habeas petition.

Incredibly, as stated above, several district courts have opined that the FBOP administrative remedy process is an alternative remedy to bar extending Bivens relief to an inmate. See Akande, 2018 U.S. Dist. LEXIS 118212 (collecting cases). But, as the Supreme Court held, it is Congressional action in the form of an existing remedy (or even the lack of a remedy when Congress has enacted legislation in an area but has explicitly or implicitly not provided a damages remedy) that counsels hesitation in implying a Bivens remedy. See Abbasi, 137 S. Ct. at 1857; Wilkie, 551 U.S. at 550; Butts, 877 F.3d at 587; see also De La Paz v. Coy, 786 F.3d 367, 375 (5th Cir. 2015). Congress did not enact the FBOP administrative remedy process.

Generally, when the Supreme Court or an appellate court has declined to extend Bivens, it has identified Congressional actions that have coun-

selled hesitation.  In Lucas, the Court held that administrative review
mechanisms crafted by Congress provided meaningful redress for First Amend-
ment retaliation claims against an employer (NASA), and, therefore, fore-
closed the need to fashion a new, judicially crafted cause of action.[2]
462 U.S. at 378.  In Wilkie, the Court held that Bivens action against
officials of the Bureau of Land Management was barred by Congress-enacted
administrative review process and ultimate judicial review.  551 U.S. 537.

Similarly, the First Circuit barred a Bivens remedy in a federal
employment discrimination case because Title VII and the Civil Service
Reform Act provided a comprehensive system for reviewing personnel actions
against federal employers which included any actions taken in violation of
the employee's constitutional rights.  Gonzalez v. Velez, 864 F.3d 45 (1st
Cir. 2017).  In Doe v. Hagenbeck, 870 F.3d 36 (2d Cir. 2017), a female
cadet filed claims against West Point employees for discrimination.  The
court denied a Bivens remedy because Congress is the authorized source
of authority over the military and has not provided a damages remedy.
The Ninth Circuit denied Bivens relief where a plaintiff sued over an
illegal FBI wiretap.  The court determined that the Wiretap Act provided
for damages and is an adequate alternate remedy for the plaintiff's alleg-
ed harm.  See Brunoehler v. Tarwater, no. 16-56634, 2018 U.S. App. LEXIS
20064 (9th Cir. July 19, 2018)(unpublished); see also Liff v. Office of the
Inspector Gen. for the United States DOL, 881 F.3d 912 (D.C. Cir. 2018)
(no Bivens remedy for injury to business' reputation because Congress
provided significant remedies for disputes between contractors and the
government).  In light of these decisions, it is clear that there is no
alternate remedy that would bar extending Bivens to Ms. Biron's claims.

---

2 The Supreme Court would, most likely, decline to extend Bivens-relief to
a First Amendment Free Exercise claim in light of Congress' enactment of

Moreover, Congress clearly did not intend for the FBOP grievance process to bar judicial action. In relevant part, the Prison Litigation Reform Act (42 U.S.C. § 1997e(a)) directs that "No action shall be brought with respect to prison conditions . . . by a prisoner . . . until such administrative remedies as are available are exhausted." Obviously, Congress did not intend for the FBOP administrative remedy to be an alternate remedy barring damages when the PLRA explicity states that administrative remedy exhaustion is a prerequisite to filing a law suit. To hold otherwise is nonsensical.

III. Conclusion

In conclusion, for the foregoing reasons, this Court should allow Ms. Biron to bring her claims for damages under Bivens as there are no special factors counselling hesitation and Congress has not acted to foreclose this Court from doing so.

Respectfully submitted,

9/14/2018
Date

Lisa Biron
Lisa Biron # 12775-049
FCI Waseca
P.O. Box 1731
Waseca, MN 56093

---

the Religious Freedom Restoration Act which is, arguably, an adequate existing remedy for a federal inmate incarcerated in a federal prison.

Luis Ojeda
12775-049
Federal Correctional Institution
PO Box 1731
Waseca, MN 56093

CERTIFIED MAIL

7019 0160 0000 4631 2059

12775-049
US District Court
Clerk of Court
501 W 10TH ST
Room 310
FORT WORTH, TX 76102
United States

Minneapolis
MON 06 MAY

2019 MAY -9 PM 12: 47

DEPUTY CLERK