IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

_____

| | |
|---|---|
| LISA BIRON, (BOP No. 12775-049) <br><br> Plaintiff, <br><br> v. <br><br> JODY UPTON, Warden, FMC-Carswell, et al. <br><br> Defendants. | Civil Action No. 4:15-CV-205-O |

## REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

The defendants previously moved to dismiss plaintiff Lisa Biron's complaint on grounds that: (1) Biron cannot show that a *Bivens*[1] remedy is available; and (2) even if such a remedy were available, the defendants are entitled to qualified immunity and dismissal of Biron's claims for various other reasons. (*See* Doc. 45 (motion to dismiss).) Biron has now filed a response (Doc. 53) to the motion, but as explained herein, she fails to show that any *Bivens* remedy is available and also fails to rebut the defendants' other arguments for dismissal. Accordingly, the defendants' motion should be granted.

### I.  Argument and Authorities

**A.   Biron fails to show that expansion of the *Bivens* remedy is appropriate here.**

Biron recognizes that her claims represent a new *Bivens* context for purposes of the analysis set out by the Supreme Court in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017).

---

[1] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

(*See* Doc. 53 at PageID 310.) Given that a new context is present, the Supreme Court's precedents "now make clear that a *Bivens* remedy *will not be available*" if there are any special factors counseling hesitation in creating such a remedy. *Abbasi*, 137 S. Ct. at 1857 (emphasis added). The defendants' motion identified a number of such factors that preclude the judicial creation of a new *Bivens* remedy. These include the existence of alternative processes, separation-of-powers principles, the potential impact on government operations, and the practical difficulties associated with Biron's proposed new causes of action. (*See* Doc. 45 at 14–19.)

Biron fails to show that these factors can be ignored or discounted so as to allow for creation of a new *Bivens* remedy. She first suggests that Congress could not have "intend[ed] to protect state inmates but not federal inmates." (Doc. 53 at 1 (capitalization modified).) As an initial matter, Biron presents a false dichotomy insofar as she appears to be suggesting that only a civil remedy for money damages will suffice to "protect" prisoners. She cites no authority for this claim, and there are various other tools by which prisoners can seek vindication for alleged violations of their rights.[2]

In any event, the fact of the matter is that Congress chose to create a statutory cause of action for money damages against persons acting under color of state law for alleged violations of constitutional rights, in 42 U.S.C. § 1983, but has not created a similar cause of action against federal officials. Biron may disagree with this as a matter of policy—she says she finds it "incredible," (Doc. 53 at 2)—and she evidently would

---

[2] In addition to the availability of injunctive relief in an appropriate proceeding (enforceable by contempt), federal prisoners can file grievances relating to their incarceration, and the Department of Justice Office of Inspector General investigates claims of serious misconduct in the federal prison system.

prefer that an equivalent to section 1983 existed for federal prisoners. But such desires do not translate into any right to have this Court create a new *Bivens* remedy for her.

Similarly unavailing is Biron's suggestion that Congress's enactment of the Prison Litigation Reform Act (PLRA) should be taken as evidence that Congress "approved of *Bivens*-damages actions." (Doc. 53 at 2.) Biron's suggestion that the PLRA was enacted for the purpose of expanding prison litigation is a novel one. The statute is in fact commonly understood to have been adopted for quite the opposite reason. *See, e.g.*, American Civil Liberties Union, ACLU History: Prisons, https://www.aclu.org/other/aclu-history-prisons (visited May 21, 2019) (describing the PLRA as a law that "subjects civil rights lawsuits brought by prisoners to a host of burdens and restrictions that apply to no one else"); Human Rights Watch, No Equal Justice: The Prison Litigation Reform Act in the United States, https://www.hrw.org/report/2009/06/16/no-equal-justice/prison-litigation-reform-act-united-states (visited May 21, 2019) (arguing that the PLRA "singles out prisoners for a unique set of barriers").

Regardless, the Supreme Court has rejected the notion that the PLRA licenses the creation of additional *Bivens* causes of action. In *Abbasi*, the Court specifically explained that the PLRA "does not provide for a standalone damages remedy against federal jailers"—even though Congress, when enacting the PLRA, "had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs." *Abbasi*, 137 S. Ct. at 1865. Accordingly, using the PLRA to justify an expansion of the *Bivens* remedy would be contrary to *Abbasi*.

Biron next argues against the existence of any alternative processes by suggesting

**Reply in Support of Defendants' Motion to Dismiss – Page 3**

that: (1) she had no opportunity to challenge the no-contact orders entered in the New Hampshire family court and in her criminal case; and (2) the Administrative Remedy Program operated by the Federal Bureau of Prisons is a "farce." (Doc. 53 at 2–3, 4.) But neither argument is availing.

With respect to her alleged inability to challenge the no-contact orders, Biron attempts to draw a distinction concerning whether the New Hampshire court "terminated" her parental rights. (*See* Doc. 53 at 2.) But Biron never explains the significance of this in relation to the question of whether *Bivens* should be expanded to encompass her novel claims. Regardless of whether a "termination" of parental rights occurred,[3] the court orders in question—both the New Hampshire order and the magistrate judge's order—clearly barred Biron from contacting her daughter. (*See* Doc. 45 at 3.) Accordingly, Biron would have had every incentive to challenge these orders if she believed them to be inappropriate or improper. Biron elected not to do so, presumably as a tactical decision given the other litigation she was involved in (such as her actual criminal prosecution). But her choice to forego processes by which she could have challenged the no-contact orders does not mean that these alternative processes were not available to her.

Similarly, although Biron attempts to impugn the BOP's Administrative Remedy

---

[3] As noted in the defendants' motion, the New Hampshire court held a "dispositional hearing"; awarded legal custody of Biron's daughter to a state agency; and barred Biron from having any contact or attempting to contact the daughter. (*See* Doc. 45 at 2–3.) It thus does not seem inaccurate to refer to the New Hampshire order as "effectively terminating" Biron's parental rights, as stated in the defendants' motion. (Doc. 45 at 3.) Accordingly, there is no merit to Biron's claim that this amounted to some kind of misrepresentation, (*see* Doc. 53 at 4–5), and in any event the precise nomenclature applied to the resolution of Biron's parental rights does not affect the analysis of whether alternative processes were available on the "no contact" issue so as to foreclose the creation of a new *Bivens* remedy.

Program, she concedes that "various U.S. District Courts" have taken the opposite view and do find this program to be an alternative process that counsels against creation of a *Bivens* remedy. (Doc. 53 at 4.) Biron does not offer any legal authority to the contrary, and her unsupported conjectures and personal views of the effectiveness of the program in specific instances are inadequate to justify the creation of a new *Bivens* cause of action.

Biron also fails to recognize that the availability of seeking habeas relief is an alternative process counseling against creation of a *Bivens* remedy. The *Abbasi* Court specifically mentioned habeas as an alternative process available to prisoners. *Abbasi*, 137 S. Ct. at 1863, 1865. And Biron took advantage of this alternative by filing multiple habeas petitions relating to the issue of contact with her daughter. (*See* Doc. 45 at 5.) The availability of habeas litigation is a further example of an alternative process that factors against expansion of *Bivens*.

Biron's concluding arguments in favor of creating a new *Bivens* remedy consist of accusations that the New Hampshire AUSAs who handled her criminal prosecution "lied" to the BOP about a court order; that the BOP then refused to correct this allegedly "false and unethical claim"; and that her case is an example of the "Executive Branch run amok."[4] (Doc. 53 at 4–5.) However, Biron fails to show that allegations of this nature that are specific to her unique case are determinative of the broader question of whether a

---

[4] Biron also claims that she was "misclassified/misdiagnosed . . . as a 'sexual predator'" in the defendants' motion, and refers to a psychological evaluation apparently filed in her criminal case. (*See* Doc. 53 at 4–5.) But the defendants' motion did not purport to offer any scientific or psychological diagnosis, and the term "sexual predator" is commonly used to refer to individuals convicted of crimes of the type Biron was convicted of—including by Congress. *See, e.g.*, Protection of Children from Sexual Predators Act of 1998, Pub. L. No. 105-314, 112 Stat. 2974 (1998) (amending, *inter alia*, 18 U.S.C. § 2423, 2251, and 2252A, the statutes under which Biron was convicted).

new category of *Bivens* claims should be created. To the contrary, the relevant analysis as detailed by the Supreme Court in *Abbasi* is to consider: (1) if the purported claims would represent a new context for *Bivens* (which Biron concedes is the case here); and then (2) if so, whether any special factors counsel against judicial expansion of the *Bivens* remedy. Because such special factors do exist in this case to preclude expansion of the *Bivens* remedy, Biron's claims cannot proceed.

**B.    Even if a *Bivens* remedy were available, Biron nonetheless fails to negate the defendants' qualified immunity and fails to state any claim for relief.**

   **1.    Biron has not identified clearly established law supporting her claims.**

In order to overcome the defendants' qualified immunity, Biron had the burden to identify some clearly established law showing the defendants' alleged conduct to have been unconstitutional. *See Vann v. City of Southaven*, 884 F.3d 307, 310 (5th Cir. 2018) (explaining that "[i]t is the plaintiff's burden to find a case in his favor that does not define the law at a 'high level of generality,'" which requires identifying some law showing that certain actions were required or forbidden "in the situation presented" (quoting *Cass v. City of Abilene*, 814 F.3d 721, 732–33 (5th Cir. 2016))).

But Biron has not pointed the Court to any such clearly established law. Instead, she cites cases addressing a different situation: restrictions on prisoners' contact with persons who have asked not to receive correspondence from a particular prisoner.[5] (*See* Doc. 53 at 6.) Not surprisingly, these cases generally hold that prison officials can impose restrictions on contacting such persons. It does not follow, however, that these

---

[5] Biron asserts, in contrast, that her daughter did *not* ask not to be contacted by Biron. (*See* Doc. 53 at 6.)

cases clearly establish that the Constitution forbids prison officials from restricting prisoners' contact with other persons (including persons like Biron's daughter, and notwithstanding Biron's assertion that her daughter did not request not to be contacted). That issue simply was not present in any of the cases Biron cites.  Accordingly, any purported rule of law about prison officials' ability to bar contact with such persons cannot have been clearly established by those cases.  Indeed, the Fifth Circuit has emphasized that clearly established law comes only from holdings in court decisions.  *See Morrow v. Meachum*, 917 F.3d 870, 875 (5th Cir. 2019).  By definition, an issue not addressed in a case cannot form the basis for a holding.  Biron does not even point to any specific dicta which could be read as requiring the defendants to allow Biron to contact her daughter.  Even if she had, though, such language still would not constitute clearly established law sufficient to overcome the defendants' qualified immunity.  *See id.*; *see also Sorenson v. Ferrie*, 134 F.3d 325, 329 n.7 (5th Cir. 1998) ("The court's language . . . is *dictum* that hardly constitutes clearly established law.").

Biron also suggests that any reasonable official should have concluded that the no-contact orders entered by the magistrate judge in Biron's criminal case and by the New Hampshire court did not in fact bar Biron from contacting her daughter.  (*See* Doc. 53 at 6–10.)  This argument runs contrary to the plain language of these orders, though.  (*See* Doc. 45 at 3.)  And Biron's claim is further undercut by her reliance on convoluted arguments to the effect that, despite the express language of the orders, prison officials somehow should have reached their own conclusions that the orders were invalid.

The magistrate judge's order, for example, straightforwardly stated that Biron

"shall have no contact (either direct or indirect) with the minor victim between now and the resolution of this case." (Doc. 53 at 7.) Biron nonetheless claims that this order was of "questionable validity" given the nature of the magistrate judge's statutory authority and the requirements of Article III of the Constitution, and also due to a remark attributed to the magistrate judge at a hearing. (Doc. 53 at 7.) Biron fails to show, however, that any prison officials would have had knowledge of these potential legal arguments (arguments that Biron apparently never raised in her criminal case), much less that the Constitution somehow required that the facially valid orders be disregarded.

Similarly, Biron makes arguments about (a) whether the "no contact" language in the New Hampshire court's order was essential to this Court's opinion in a subsequent habeas proceeding, (b) whether the New Hampshire order should be considered "FOIA-exempt," and (c) whether a separate "order of protection" might also be required by New Hampshire law. (*See* Doc. 53 at 8–9.) None of these arguments, however, bears any relevance to the question whether the defendants unreasonably violated some constitutional right of Biron's that had been clearly established by a holding of the Fifth Circuit or Supreme Court. Because Biron has not made that showing, the defendants are entitled to qualified immunity.

**2.     Biron's complaint fails to state a claim and is barred for other reasons.**

In addition to failing to overcome qualified immunity, Biron's complaint is also subject to dismissal on additional, independent grounds.

First, Biron fails to state any claim for relief. Prison officials "may place restraints on the exchange of non-legal mail between prisoners and outside persons and between

prisoners within the prison so long as the restraint is related to a legitimate governmental interest." (Doc. 13 at 7–8 (citing *Brewer v. Wilkinson*, 3 F.3d 816, 825 (5th Cir. 1993), and *Thornburgh v. Abbott*, 490 U.S. 401, 413–14 (1989)).) Biron has not pleaded any facts showing illegitimate interference with her ability to contact outside persons.

Second, no claims for declaratory or injunctive relief are possible against the defendants in their personal capacities. *See Feit v. Ward*, 886 F.2d 848, 858 (7th Cir. 1989) (concluding that a plaintiff's "attempt to obtain declaratory and injunctive relief from the defendants in their personal capacities fails to state a claim upon which relief may be granted"); *Thomas v. Matevousian*, No. 1:17-CV-1592, 2018 WL 5099763, at *5 (E.D. Cal. Oct. 18, 2018) ("Relief under *Bivens* does not encompass injunctive and declaratory relief where the equitable relief sought requires official government action. . . . *Bivens* is both inappropriate and unnecessary for claims seeking solely equitable relief against actions by the federal government." (internal citations omitted)) (magistrate judge's recommendation), *adopted as modified on other grounds*, 2019 WL 266323 (E.D. Cal. Jan. 18, 2019). Biron attempts to avoid this rule by relying on *Camreta v. Greene*, 563 U.S. 692 (2011), but her argument is unavailing. (Doc. 53 at 12–13.) *Camreta* was a suit for "damages" against state officials under section 1983, and thus says nothing about whether declaratory or injunctive relief is available against federal officials in their personal capacities under *Bivens*. *See Camreta*, 563 U.S. at 697. And in the passage from *Camreta* that Biron quotes, the Supreme Court was merely explaining why courts have flexibility in the two-pronged qualified-immunity analysis to consider the issue of whether a right was violated before then also considering whether the right was clearly

established. *See id.* at 706–07. Biron thus fails to show that any form of non-monetary relief is available under *Bivens*.

Third, the *Heck* bar applies. Under *Heck*, a civil-rights claim is barred if it would call into question the legality of the fact or duration of a prisoner's confinement—including insofar as good-time credit may have been taken away from the prisoner for a disciplinary conviction. *See Edwards v. Balisok*, 520 U.S. 641, 646–48 (1997). Biron attempts to avoid *Heck* by arguing that her disciplinary convictions involved only a circumvention of mail monitoring, and not contact with her daughter. (Doc. 53 at 11–12.) But Biron's purported right to contact her daughter was squarely at issue in the disciplinary proceedings. As this Court explained in Biron's habeas case, Biron "claim[ed] that the Bureau of Prisons (BOP) has brought numerous disciplinary charges against her for attempting to send mail to [her daughter] based on its erroneous contention that there exists a court order barring contact" (including one disciplinary charge of "use of the mail for an illegal purpose or to commit or further a greatest category prohibited act"), and that Biron lost good-time credit as a result. *Biron v. Upton*, No. 4:14-CV-772-O, 2015 WL 3603190, at *1 (N.D. Tex. June 9, 2015). Biron's disciplinary charges and resulting loss of good-time credit were based, at least in part, on Biron's attempts to contact her daughter, and not just the use of code. *See id.*; *see also, e.g.*, Habeas No. 4:14-CV-823-O Doc. 19 at 056 (incident report charging Biron with "[a]ttempt[ing] to communicate with the minor victim"). Accordingly, *Heck* applies.

## II.   Conclusion

Biron's complaint should be dismissed in its entirety.

Respectfully submitted,

ERIN NEALY COX
United States Attorney

/s/ Brian W. Stoltz
Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:  214-659-8626
Facsimile:   214-659-8807
brian.stoltz@usdoj.gov

Attorneys for Defendants Upton,
Cimperman (Carter), Wenger, Kingsley,
and Smith-Branton

Certificate of Service

On May 23, 2019, I served the foregoing document on plaintiff Lisa Biron by mailing it to her via certified mail # 7001 2510 0003 7048 0246, addressed as follows:

Lisa Biron # 12775-049
FCI Waseca
P.O. Box 1731
Waseca, MN 56093

/s/ Brian W. Stoltz
Brian W. Stoltz
Assistant United States Attorney