**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **LISA BIRON,** | § | |
| **(BOP No. 12775-049)** | § | |
| | § | |
| **Plaintiff,** | § | |
| **V.** | § | **Civil Action No. 4:15-CV-205-P** |
| | § | |
| **JODY UPTON, Warden,** | § | |
| **FMC-Carswell, et al.** | § | |
| | § | |
| **Defendants.** | § | |

## OPINION and ORDER GRANTING MOTION TO DISMISS

This case was recently reassigned from the docket of Judge Reed O'Connor the docket of the undersigned district judge. Special Order, ECF No. 55. Now pending is the collective motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) filed by all Defendants. Mot. Dismiss, ECF No. 45. Plaintiff Lisa A. Biron has filed a response to the motion to dismiss (ECF No. 53), and Defendants filed a reply (ECF No. 54). After considering the relief sought by Biron, the record, the briefing and the applicable law, the Court finds that the Defendants' motion to dismiss must be **GRANTED**, and all Biron's claims must be dismissed.

## I. BACKGROUND

### A. § 1915A/1915(e)(2)(B) Initial Screening, Appeal, and Order of Remand

Biron, then an inmate at the Bureau of Prisons' FMC-Carswell facility, filed a complaint naming as defendants several officials at FMC-Carswell in their individual and official capacities, and asserting claims for relief under the First, Fifth, and Eighth

Amendments under *Bivens v. Six Unknown Named Agents of Fed. Bureau of* Narcotics, 403 U.S. 388 (1971), and seeking monetary damages and declaratory and injunctive relief. Compl. 2–6, ECF No. 1. In an order and judgment issued under authority of 28 U.S.C. § 1915A and 1915(e)(2)(B), the then presiding judge dismissed all claims. Order 1–13, ECF No. 13. Biron appealed. On appeal, the United States Court of Appeals for the Fifth Circuit affirmed the dismissal of Biron's Eighth Amendment claim and all official capacity claims, but vacated the dismissal of the remaining claims and remanded for further proceedings. *Biron v. Upton,* 737 F. App'x 713 (5th Cir. 2018). After remand, Biron filed a first amended complaint. First Am. Complaint 1–10, ECF No. 27.

## B. Related Habeas Corpus Cases

Before the Court recites the claims in Biron's first amended complaint, it is important to place those claims in context with her criminal conduct, with prior suits seeking habeas corpus relief, and with court orders issued during her criminal prosecution proceedings. Prior to filing this civil suit seeking relief under *Bivens*, Biron filed four separate petitions challenging disciplinary proceedings in this district under 28 U.S.C. § 2241; *Biron v. Upton*, No. 4:14-cv-603-O (N.D. Tex. Aug. 1, 2014) (order dismissing for lack of jurisdiction); *Biron v. Upton*, No. 4:14-cv-627-A (N.D. Tex. Aug. 15, 2014) (order dismissing for lack of exhaustion); *Biron v. Upton*, No. 4:14-cv-772-O (consolidated with 4:14-cv-823-O) (N.D. Tex. June 9, 2015) (order dismissing in part and denying in part).[1] The background section

---

[1] The Court takes judicial notice of the docket and records of these prior cases filed in this the Northern District of Texas. *See* Fed. R. Evid. 201(b)(2) and (c)(1).

of the Opinion and Order issued by the court in case number 4:14-cv-772-O explains:

> [Biron] was charged in the United States District Court for the District of New Hampshire with transportation of a minor with intent to engage in criminal sexual activity, sexual exploitation of children, and possession of child pornography. Resp's App., No. 4:14-CV-823-O, at 6, ECF No. 19. All charges involved her minor daughter, R.B. On December 4, 2012, before the criminal trial, the 9th Circuit-Family Division Court of Manchester, New Hampshire, ordered that Petitioner "shall not contact or attempt to contact R.B. either directly or indirectly" and "shall have no contact with R.B. including third party contact except that as may be deemed appropriate by and monitored by DCYF." [FN- "DCYF" stands for the Division for Children, Youth and Families of the State of New Hampshire's Department of Health and Human Services according to the Department's website.] *Id.* at 6, 12. Also, on January 3, 2013, before the criminal trial, the convicting court, as an addendum to its detention order, ordered that Petitioner "shall have no contact (either direct or indirect) with the minor victim between now and the resolution of this case." *Id.* at 21. Following her convictions, Petitioner appealed, but, on November 14, 2014, the First Circuit affirmed the judgment of the convicting court, and, on March 23, 2015, the Supreme Court denied a petition for writ of certiorari. *Id.* at 78; Order, *Biron v. United States*, 135 S. Ct. 1576 (2015). Petitioner continues to serve her combined 480-month term of imprisonment.

Op. and Order 1–2, ECF No. 16, *Biron v. Upton*, No.4:14-CV-772-O.

As referenced, prior to Biron's criminal conviction, on December 4, 2012, the 9th Circuit Family Division Court of Manchester, New Hampshire, held a "dispositional hearing" regarding Biron's parental rights with respect to her daughter. Hearing Order 1–7, *Biron v. Upton*, No. 4:14-CV-823-O, ECF No. 19-1, 4–7; ECF No. 19, 6–7.[2] Finding that Biron's daughter had suffered abuse, the New Hampshire, Family Division Court ordered that Biron "shall not contact or attempt to contact [R.B.] either directly or indirectly" and "shall have

---

[2]Portions of the copy of the seven-page order of the New Hampshire court are located in two places within the Respondent's appendix filed in case number 4:14-cv-823-O; ECF No. 19-1, 4-7 (order pages 1 through 4) and ECF No. 19, 6-8 (order pages 5 through 7).

no contact with [R.B.] including third party contact except that as may be deemed appropriate by and monitored by DCYF." Hearing Order 7, *Biron v. Upton*, No. 4:14-cv-823-O, ECF No. 19. Each of Biron's § 2241 petitions ultimately challenged the Bureau of Prisons (BOP) disciplinary proceedings brought against Biron for her attempts, while housed in FMC-Carswell, to make contact with her minor daughter R.B. *See* Op. and Order 1–2, *Biron v. Upton,* No. 4:14-cv-603-O, ECF No. 4*;* Mem. Op. and Order 1–2, *Biron v. Upton,* No. 4:14-cv-627-A, ECF No. 6; Op. and Order 2–8, *Biron v. Upton,* No. 4:14-cv-772-O, ECF No. 16.

### C. Biron's First Amended Complaint

Biron's first amended complaint re-asserts violations of the First and Fifth Amendments to the Constitution over actions taken by FMC-Carswell officials to attempt to regulate her continuing efforts to make contact with R.B., including seeking compensatory and punitive monetary damages and declaratory relief. First Am. Complaint 1–2, 10, ECF No. 27. She names as defendants persons associated with FMC-Carswell: Jody Upton, (then) warden; Lauren Cimperman (Carter), staff psychologist; Debra Winger, special investigative services (SIS) officer; Lieutenant Kingsley, SIS officer; and E. Smith-Branton, identified as a member of the disciplinary committee. *Id*. 1, 4. Biron recites numerous claims against these defendants arising from their actions in attempting to block her communication with R.B. including (as numbered by Biron):

¶ 9. On or about June 30, 2014, SIS Officer Wenger intercepted, stopped, and confiscated a letter mailed by Ms. Biron to her daughter R.B.

¶ 10. On or about June 30, 2014, SIS Officer Wenger intercepted, stopped, and confiscated mail mailed by Ms. Biron to her father (and power of attorney) Michael Bonczar.

¶ 11. On or about July 5, 2014, Warden Jody Upton was made aware of this

wrongful mail interception and confiscation via detailed email from Ms. Biron and failed to act to rectify this wrongful action.

¶ 12. On or about July 15, 2014, Lauren Cimperman told Ms. Biron not to contact or attempt to contact her daughter R.B.

¶ 13. On or about October 16, 2014, warden Jody Upton issued a "Restricted Correspondence Notification" to bar Ms. Biron's lawful mail to her daughter R.B.

¶ 14. On or about November 19, 2014 and on or about November 30, 2014, SIS Officer Wenger intercepted and stopped two (2) letters written and mailed by Ms. Biron to Michael Biron (her ex-husband) and told Ms. Biron that she could no longer send mail to Michael Biron.

¶ 15. On or about December 1, 2014 through December 3, 2014, Warden Jody Upton was informed and failed to intervene and correct the wrongful interference with the two (2) November 2014 mailings to Michael Biron, and directed or allowed staff to block future mailings to both R.B. and Michael Biron by disabling her ability to print TRULINCS labels to their address which are required to send mail.

¶ 16. On or about November 27, 2014, SIS Officer Wenger in concert with Warden Upton blocked Ms. Biron's ability to call Michael Biron and R.B.

¶ 17. On or about December 12, 2014, Lauren Cimperman, in concert with SIS Officer Kingsley, imposed a "Correctional Management Plan" to bar Ms. Biron's contact with R.B.

¶ 18. On January 28, 2015, Lauren Cimperman issued a prison discipline report against Ms. Biron for asking a family member over the phone to find out how R.B. liked a book that she had received for Christmas.

¶ 19. On or about February 24, 2015, Lauren Cimperman issued a prison discipline report against Ms. Biron for asking the family's pastor to contact R.B. to see how she was doing.

¶ 20. On or about February 26, 2015, Ms. E. Smith-Branton sanctioned Ms. Biron with loss of telephone privileges in connection with the February 24, 2015 incident report for attempting to exercise her constitutional right to contact R.B.

¶ 21. On or about March 12, 2015, Ms. E. Smith-Branton sanctioned Ms. Biron with loss of telephone privileges in connection with the January 28, 2015 incident report for attempting to exercise her constitutional right to contact R.B.

¶ 23. Since Ms. Biron's transfer to FCI Waseca, MN, she has requested that the illegal bar to contact with her daughter R.B. be removed. Her request was denied because the staff at Waseca did not independently evaluate the situation and continue to enforce the Carswell defendants' unconstitutional bar to contact.

First Am. Complaint, 4–8, ECF No. 27. Immediately after the listing of each of these factual allegations, Biron recites that "[This 'act' or 'action'] violated Ms. Biron's rights under the First and Fifth Amendment to the U.S. Constitution as no State or Federal bar to contact existed or exists and said act served no legitimate penalogical [sic] purpose in furtherance of the safety and security of the institution or staff or protection of the public." *Id.* Biron also contends that she has a "First Amendment right to association with her daughter R.B. that includes all legitimate forms of communication." *Id*. 8. And Biron contends that she has a "Fifth Amendment right to substantive due process which provides heightened protection against government interferences with the parent-child relationship" and that the "defendants have no legal basis to interfere with the constitutionally protected familial relationship." *Id.* at 9. As noted, Biron seeks both monetary damages and a declaratory judgment. *Id*. 10.

## II. DEFENDANTS' MOTION TO DISMISS

### A. Rule 12(b)(6) Standard

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is generally viewed with disfavor. *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir.1997). The court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Bustos v. Martini Club Inc*, 599 F.3d

458, 461 (5th Cir. 2010) (citing *True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009)). Rule 12 must be interpreted in conjunction with Rule 8(a), which sets forth the requirements for pleading a claim for relief in federal court and calls for "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court cannot look beyond the face of the pleadings in resolving a Rule 12(b)(6) motion. *Doe ex rel. Magee v. Covington Cnty, Sch. Dist.*, 649 F.3d 335, 341 (5th Cir. 2011) (explaining that "[w]e examine only the allegations within the four corners of the complaint"), *aff'd on rehearing en banc*, 675 F.3d 849 (5th Cir. 2012). A plaintiff, however, must plead specific facts, not mere conclusory allegations, to avoid dismissal. *See Schultea v. Wood*, 47 F.3d 1427, 1431 (5th Cir. 1995) (en banc); *see also Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss") (citation omitted)). Rule of Civil Procedure 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

As the United States Supreme Court explained in *Bell Atlantic Corp. v. Twombly,* the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face" and his "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. 544, 555 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), to the extent the Court concluded therein that a plaintiff can survive a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief"). Then, in *Ashcroft v. Iqbal,* the Supreme Court

clarified that review of a 12(b)(6) motion is guided by two principles: (1) a court must apply the presumption of truthfulness only to factual matters and not to legal conclusions; and (2) only a complaint that states a plausible claim for relief survives a motion to dismiss. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678-680. If the pleadings fail to meet the requirements of *Iqbal* and *Twombly* no viable claim is stated and the pleadings are subject to dismissal.

### B.    Analysis – Whether *Bivens* Extends to Biron's Constitutional Claims

#### 1.    Introduction

In *Bivens*, the United States Supreme Court for the first time "recognized 'an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights,'" specifically, under the Fourth Amendment. *Butts v. Martin*, 877 F.3d 571, 587 (5th Cir. 2017) (quoting *Corr. Servs. Corp. V. Maelsko*, 534 U.S. 61, 66 (2001)). In subsequent decisions the Supreme Court decided only two other cases in which it recognized an implied cause of action outside of the Fourth Amendment context: *Davis v. Passman*, 442 U.S. 228 (1979) (holding the "Fifth Amendment Due Process Clause gave [the petitioner] a damages remedy for gender discrimination") and *Carlson v. Green*, 446 U.S. 14 (1980) (holding that the "Eighth Amendment Cruel and Unusual Punishments Clause gave [a prisoner's estate] a damages remedy for failure to provide adequate medical treatment"). *See Ziglar v. Abbasi*, 137 S.Ct. 1843, 1854-55 (2017). In *Abbasi*, the Court noted that those "three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Id.* at 1855. And

the Court explained it had "notabl[y] change[d] . . . [its] approach to recognizing implied causes of action . . . ma[king] clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Id*. at 1857 (citing *Iqbal*, 556 U.S. at 675).

In remanding this case, the Fifth Circuit recognized the need for this court to address the "foundational issue" of whether *Bivens* applies to Biron's claims:

> Since *Bivens's* inception [in 1971], the Supreme Court has only extended *Bivens* beyond the deprivation of Fourth Amendment rights on two occasions: for violations of the Fifth Amendment Due Process Clause for gender discrimination . . . and for violations of the Eighth Amendment prohibition against cruel and unusual punishment." *Butts v. Martin*, 877 F.3d 571, 587 (5th Cir. 2017) (citing *Davis v. Passman*, 442 U.S. 228 (1979) and *Carlson v. Green*, 446 U.S. 14 (1980)). Still alive because she has briefed them on appeal are a First Amendment and a substantive due process claim under the Fifth Amendment. If those are new contexts to which *Bivens* has not yet been applied, the need arises to analyze whether *Bivens* should be extended to such claims.

*Biron,* 737 F. App'x at 716.

In order to determine whether a *Bivens* remedy is available to Biron, this Court "must first assess whether [her] claim[s] present a new *Bivens* context." *Butts*, 877 F.3d at 587 (citing *Ashcroft v. Iqbal*, 556 at 675). "If so, there are two circumstances where *Bivens* does not recognize an implied cause of action for constitutional violations. First, *Bivens* claims are unavailable 'if there are special factors counseling hesitation in the absence of affirmative action by Congress.'" *Butts*, 877 F.3d at 587 (quoting *Abbasi*, 137 S.Ct. at 1857 (internal citation omitted). "Second, *Bivens* remedies may be foreclosed by congressional action where an 'alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.'" *Butts*, 877 F.3d at 587 (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)).

2.      Whether *Biron's* Claims Present a New *Bivens* Context

When confronted with an opportunity to extend *Bivens* to First Amendment claims, the Supreme Court "decline[d] 'to create a new substantive legal liability without legislative aid and as at the common law'" because the Court determined that, "Congress is in a better position to decide whether or not the public interest would be served by creating it." *Bush v. Lucas*, 462 U.S. 367, 390 (1983) (quoting *United States v. Standard Oil Co. of Cal.*, 332 U.S. 301, 302 (1947); *accord Iqbal*, 556 U.S. at 675 (noting "we have declined to extend *Bivens* to a claim sounding in the First Amendment") (citing *Bush*, 462 U.S. at 368); *Reichle v. Howards*, 566 U.S. 658, 663 N. 4 (2012) ("We have never held that *Bivens* extends to first Amendment claims") (citing *Iqbal*, 556 U.S. at 675; *Bush*, 462 U.S. at 368.)  The Fifth Circuit has also recognized that *Bivens* has not been extended to First Amendment claims. *See Butts,* 877 F.3d at 588 (5th Cir. 2017) ("Because the Supreme Court has not recognized a *Bivens* remedy in the First Amendment context, Butts's claim likely presents a new context under *Bivens*") (citing *Abbasi*, 137 S.Ct. at 1859 and *Iqbal*, 556 U.S. at 675); *Brunson v. Nichols*, 875 F.3d 275, 279 N.3 (5th Cir. 2017) ("[T]he Supreme Court strongly cautioned against extending Bivens to new contexts. A First Amendment claim is likely a new context."). Based on these authorities and other recent cases, this Court concludes that Biron's First Amendment claim presents a new *Bivens* context. *See Begay v. Leap*, No. 3:17-cv-2639-N(BT), 2019 WL 1318410, at * 3 (N.D. Tex. Feb. 26, 2019) (reviewing the controlling case authority and finding that federal prisoner plaintiff's First Amendment claim presents a new *Bivens* context), *R & R adopted*, 2019 WL 1315901 (N.D.Tex. Mar. 22, 2019); *see also Zimmer v. Sallet,* No.17-7563, 2019 WL 5294944, at 5–6 (E.D. La. Oct. 18, 2019) ("A survey of district

court decisions in the wake of *Butts* shows a consistent hesitation in this [the Fifth] Circuit to extend *Bivens* remedies to First Amendment claims") (citations omitted).

Biron's other constitutional claim arises under the substantive due process clause of the Fifth Amendment. The Supreme Court has declined to extend a *Bivens* remedy to due process claims in a number of contexts. Indeed, in *Abassi*, the Court declined to allow a *Bivens* remedy to aliens who were in the United States without legal authorization but were allegedly held without bail for several months in extremely harsh and physically abusive conditions. *Abbasi*, 137 S.Ct. at 1852-53. There, the Supreme Court found that the prisoner petitioner's abuse claim under the Fifth Amendment's substantive due process component sought to extend *Carlson*, and derivatively, *Bivens*, to a new context. *Id*. at 1864 ("The constitutional right is different here, since *Carlson* was predicated on an Eighth Amendment and this claim is predicated on the Fifth.")  But the Supreme Court remanded for the lower court to engage an analysis of any special factors counseling hesitation. *Id.* at 1865. Based on their review of *Abassi*, other courts have expressly determined that substantive due process claims under the Fifth Amendment arise in a new *Bivens* context. *See Doe v. United States,* 381 F.Supp. 3d 573, 611-12 (M.D. N.C. 2019)("This case [including allegations that individual defendants violated Plaintiff's substantive due process rights under the Fifth Amendment] arises in a new *Bivens* context."); *Harris v. Dunbar*, No. 2:17-cv-536-WTL-DLP, 2018 WL 3574736, at *4 (S.D. Ind. July 25, 2018). Applying the logic of these cases to the claims here, the Court also concludes that Biron's Fifth Amendment substantive due process claim presents a new *Bivens* context.

Further, the Court notes that Biron concedes that both of her constitutional claims present a new context, acknowledging that the Supreme Court "never recognized a First Amendment *Bivens* claim," and that the Supreme Court's "Fifth Amendment *Bivens* case arose in a federal employment sex discrimination case [] which bears no resemblance to Ms. Biron's case." Biron's Mem. 2, ECF No. 28. Thus, as the Court has found that both of Biron's claims present a new *Bivens* context, and she concedes this point, the Court must determine whether it should expand the *Bivens* remedy to include her claims. That requires a review of whether any "special factors" counsel hesitation in recognizing a new judicial remedy, and whether alternative processes protect Biron's interests.

### 3. Overview of Special Factors to Consider

When a purported *Bivens* claim is asserted in a new context, *Abbasi* requires consideration of whether "special factors" counsel against inferring such a cause of action in the absence of "affirmative action by Congress" to create one. *Abbasi*, 137 S. Ct. at 1857. As clarified by *Abbasi*, this "inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1857–58. A *Bivens* remedy should not be inferred if "there are sound reasons to think Congress *might* doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong." *Id.* at 1858 (emphasis added). Relatedly, "if there is an alternative remedial structure present in a certain case," the existence of that existing process "alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id.*

Although Biron asserts in her response that Congress could not have intended to fail to provide federal inmates the same protections offered through 42 U.S.C. § 1983 authorization for a person to seek relief against individual state and local employees, that reality is at the heart of the *Abassi* analysis. Resp. 1–2, ECF No. 53. Congress chose to create a statutory cause of action, 42 U.S.C. § 1983, for money damages against persons acting under color of state law for alleged violations of constitutional rights, but has not created a similar cause of action against federal officials. Though Biron may disagree with this as a matter of policy—she suggests it is "incredible"—her preference for a non-existent statutory remedy does not change the need to conduct the *Abbasi* analysis of whether a *Bivens* remedy should be extended to her constitutional claims.

4.    Special Factors Counsel Against *Bivens* Expansion**.**

One of the most significant special factors, emphasized repeatedly in *Abbasi*, are separation-of-powers principles. *See Abbasi*, 137 S. Ct. at 1857 ("When a party seeks to asser an implied cause of action under the Constitution itself, . . . separation-of-powers principles are or should be central to the analysis"). *Abbasi* recognized that Congress's failure to provide a damages remedy is both "relevant" and "telling" when it has regulated extensively in a specific arena and made specific policy choices as to how complaints should be resolved. *Id.* at 1862. Here, Congress has legislated extensively with respect to prisoners' rights, and "legislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation." *Id.* at 1865. "Some 15 years after *Carlson* was decided, Congress passed the Prison Litigation Reform Act of 1995 ("PLRA"), which made comprehensive changes to the way prisoner abuse claims must be brought in federal court." *Id.* (citing 42

U.S.C. § 1997e). "So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs." *Id. Abbasi* makes clear that Congress could have extended the *Carlson* damages remedy to cases involving other types of prisoner mistreatment, but chose not to. *Id.*

Biron argues in her response that Congress's enactment of the PLRA actually should be taken as evidence that Congress "approved of *Bivens*-damages actions." Resp. 2 , ECF No. 53. However, Brion's argument is refuted by the analysis in *Abbasi*. As noted above, the Supreme Court noted in *Abbasi* that the PLRA "does not provide for a standalone damages remedy against federal jailers"—even though Congress, when enacting the PLRA, "had specific occasion to consider the manner of prisoner abuse and to consider the proper way to remedy those wrongs." *Abbasi*, 137 S. Ct. at 1865. Thus, Biron's reference to the enactment of the PLRA to justify an expansion of the *Bivens* remedy is rejected.

Additional special factors that weigh against extending *Bivens* to the type of First and Fifth Amendment claims asserted by Biron are the system-wide costs associated with the creation of a damages remedy absent congressional action. As *Abbasi* instructs, "the decision to recognize a damages remedy requires an assessment of its impact on governmental operations systemwide." *Abbasi*, 137 S. Ct. at 1858. This includes "the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself . . . ." *Id.* In the prison context, these burdens and costs are particularly high due, in part, to the sheer volume of potential litigation arising from the

creation of a *Bivens* remedy—there are more than 175,000 federal inmates and over 36,000 BOP employees. *See* Federal Bureau of Prisons, About Our Agency, https://www.bop.gov/about/agency/ (last visited Jan. 6, 2020).

Yet another special factor counseling hesitation here is the difficulty in creating a workable cause of action. *See Abbasi*, 137 S. Ct. at 1864–65 (discussing the lack of clarity as to the legal standard for a purported *Bivens* claim alleging a warden allowed staff to abuse a pretrial detainee); *Vanderklok v. United States*, 868 F.3d 189, 209 (3d Cir. 2017) (recognizing the "inherent uncertainty surrounding" the applicable legal standard as "a factor counseling hesitation" in expanding *Bivens*). Congress and the Supreme Court have repeatedly deferred to the Attorney General and prison administrators' expertise because "the problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). Biron's claims relating to prison officials' attempts to manage Biron's contact with her victim/daughter are matters of prison administration and are not subject to any clear legal standard so as to make a *Bivens* claim viable. Moreover, by not legislating a *Bivens*-type remedy in this area despite ample opportunity to do so, it is clear that Congress does not intend for such a remedy to be created and that these matters of prison discipline and control are better left to prison officials with appropriate oversight through existing court procedures (like habeas petitions). This is especially true in the context of this particular case, given the self evident policy implications of preventing persons convicted of sexual crimes with a minor from contacting and having further opportunities to attempt to manipulate their victims, even from prison.

5.     Alternative Remedial Processes Available to Biron.

One key consideration against implying a *Bivens* remedy in a new context is the availability of alternative processes to address the allegedly improper actions by prison officials. For example, prisoners like Biron can seek "an injunction requiring the warden to bring his prison into compliance" or can seek "some other form of equitable relief." *Abbasi*, 137 S. Ct. at 1865. And this "existence of alternative remedies usually precludes a court from authorizing a *Bivens* action." *Id.* Here, in fact, Biron has already taken advantage of several alternative processes available to her by: (1) filing separate habeas actions to contest the discipline imposed against her for attempting to contact her victim/daughter; and (2) filing official-capacity claims for equitable relief. The fact that Biron did not prevail in the other habeas-corpus actions and abandoned her official-capacity claims on appeal in this case does not change the calculus, because it is the *availability* of the alternative remedy that is key, not whether the person is able to ultimately succeed under that remedy. *See Andrews v. Miner*, 301 F. Supp. 3d 1128, 1134-36 (N.D. Ala. 2017) (rejecting expansion of *Bivens* into a new context after noting that the prisoner was able to pursue administrative remedies, "albeit unsuccessfully").

The Federal Bureau of Prisons' Administrative Remedy Program is another alternative process available to prisoners like Biron. Under this program, prisoners can file grievances about any aspect of their confinement, the agency must provide written responses in specified time frames, and prisoners may appeal institution-level responses to the agency's regional and central offices. *See* 28 C.F.R. §§ 542.10–19 (2017). Numerous courts post-*Abbasi* have recognized that the Administrative Remedy Program is an alternative process and a special

factor that forecloses expansion of the *Bivens* remedy. *See, e.g.*, *Begae v. Leap*, No. 3:17-CV-2639-N-BT, 2019 WL 1318410, at *3 (N.D. Tex. Feb. 6, 2019), *R and R adopted*, 2019 WL 1315901 (N.D. Tex. Mar. 22, 2019) ("[S]everal courts have explicitly recognized the administrative remedy program ('ARP') available in the prison setting as an alternative process foreclosing a personal-capacity damages remedy") (quoting *Brunson v. Nichols*, 2018 WL 7286410, at *3 (W.D. La. Dec. 7, 2018), *R and R adopted*, 2019 WL 545479 (W.D. La. Feb. 11, 2019)); *Vega v. United States*, 881 F.3d 1146, 1154 (9th Cir. 2018); *Muhammad v. Gehrke*, No. 2:15-CV-334, 2018 WL 1334936, at *4 (S.D. Ind. Mar. 15, 2018); *Howard v. Lackey*, No. 7:16-CV-129, 2018 WL 1157547, at *3 (E.D. Ky. Mar. 5, 2018); and *Gonzalez v. Hasty*, 269 F. Supp. 3d 45, 60 (E.D. N.Y. 2017). Although Biron argues in her response that the three-level administrative remedy program is a "farce," she acknowledges the "trend" that various "U.S. District Courts" have refused to extend Bivens liability due to the availability of that program. Resp. 8, ECF No. 53. But Biron does not offer any legal authority undermining the administrative remedy program, and her conjectures regarding the effectiveness of the program are inadequate to justify the creation of a new *Bivens* cause of action.

Moreover, Biron also could have challenged any "no contact" orders or orders involving her parental rights in the underlying state family-court proceedings or in her criminal case. Biron disagress, arguing that her parental rights were never terminated. Resp. 6, ECF No. 53. But she never explains the significance of this fact in relation to the question of whether *Bivens* should be expanded to her novel claims. The Court has already taken judicial notice of the records of a prior habeas corpus proceeding before this Court, *Biron v.*

*Upton*, No. 4:14-CV-823-O that included a record of a New Hampshire court order that Biron "not contact or attempt to contract [R.B.] either directly or indirectly" and shall have no contact with [R.B.] including third party contact except that as my be deemed appropriate by and monitored by DCYF." *See supra* page 3, n. 2. Regardless of whether a termination-of-rights occurred, the Court order in question clearly barred Biron from contacting her daughter. Accordingly, Biron would have had every incentive to challenge this order if she believed it to be inappropriate or improper. Biron elected not to do so. Her choice to forego processes by which she could have challenged the no-contact order does not mean that an alternative process was not then available to her. Biron essentially seeks to collaterally challenge the non-contact decisions through an expansion of the *Bivens* remedy, but that is not proper given that she had ample opportunity to litigate the issue of her relationship with her victim/daughter in these other proceedings.

For the foregoing reasons, there are no grounds for expanding the *Bivens* remedy to encompass Biron's constitutional claims. Indeed, with respect to purported First Amendment claims such as Biron's, another court in this district recently noted that "independent research further reveals that other district courts recently faced with similar questions about implying a *Bivens* remedy in the First Amendment context have declined to do so because such action would 'violate Congress's intent, create increased costs on the Bureau of Prisons, and have a harmful effect on institutional security and federal officers' discharge of their duties." *Begay*, 2019 WL 1318410, at *4 (quoting *Butler v. Porter*, 2018 WL 6920355, at *3 (W.D. La. Sep. 10, 2018), *R and R adopted*, 2019 WL 81677 (W.D. La. Jan. 2, 2019)). Also instructive is the Third Circuit's recent discussion of such a claim in *Bistrian v. Levi*, 912 F.3d

79 (3d Cir. 2018). In rejecting a prisoner's attempt to proceed on a First Amendment *Bivens* claim, the court explained that "[t]he Supreme Court has never recognized a *Bivens* remedy under the First Amendment" and that, "[n]ationwide, district courts seem to be in agreement that, post-*Abbasi*, prisoners have no right to bring a *Bivens* action for violation of the First Amendment." *Id.* at 95, 96 (internal citations and quotation marks omitted). "Finally, persuasive circuit court precedent informs the Court's decision not to extend a Bivens remedy to Plaintiff's claims that his First Amendment rights were violated  . . .." *Zimmer v. Sallet*, No.17-7563, 2019 WL 5294944, at *5 (E.D. La. Oct. 18, 2019) (citing  *Bistrian*, 912 F.3d at 95-96 and *Vega v. United States*, 881 F.3d 1146 (9th Cir. 2018)).

Similarly, courts that have considered purported Fifth Amendment *Bivens* claims post-*Abbasi* have found such claims unavailable. *See Gonzalez*, 269 F. Supp. 3d at 59–63; *Mercer v. Matevousian*, No. 1:18- CV-265, 2018 WL 3917969, at *2–3 (E.D. Cal. Aug. 14, 2018).  Because Biron's first amended complaint seeks monetary damages relief for violation of her First and Fifth Amendment rights under *Bivens*, and review of the law and underlying records confirms that no *Bivens* remedy is available for her claims, the Defendants' collective motion to dismiss these claims under Federal Rule of Civil Procedure 12(b)(6) must be granted and Biron's constitutional claims against all defendants must be dismissed.[3]

---

[3]In the motion to dismiss under Rule 12(b)(6), Defendants also argue that they are each entitled to qualified immunity. Mot. Dismiss 17–19, 26–28, ECF No.45. Because the Court has determined that plaintiff Biron lacks a cause of action under *Bivens*, the Court need not address the qualified immunity issue. *See generally Maria S. As Next Friend for E.H.F. v. Garza*, 912 F.3d 778, 783 (5th Cir. 2019)("The district court granted summary judgment on the issue of qualified immunity, but the defendants prevail on an alternative basis: the plaintiffs lack an implied cause of action under *Bivens*"). Furthermore, and alternatively, each remaining Defendant is entitled to qualified immunity for the reasons stated in the defendants' motion to dismiss, at section II(B) and III(B)(1).

## C.    Dismissal of Remaining Claim for Declaratory Relief

As noted above, Biron also continues to seek relief against the Defendants for a declaratory judgment that the acts and omission of the defendants violated her constitutional rights. First Am. Complaint 2, 10, ECF No. 27. First, as the court of appeals' disposition of this case made clear, Biron abandoned any official capacity claims against the defendants. *Biron,* 737 F. App'x at 716. Therefore, any claim for declaratory relief would have to be considered only against the defendants in their individual capacities. Where Biron is seeking relief relating to the defendants' actions taken in the course of their duties as prison officials, however, no such relief is available in a personal capacity. *See Feit v. Ward*, 886 F.2d 848, 858 (7th Cir. 1989) (concluding that a plaintiff's "attempt to obtain declaratory and injunctive relief from the defendants in their personal capacities fails to state a claim upon which relief may be granted"); *Thomas v. Matevousian*, No. 1:17-CV- 1592, 2018 WL 5099763, at *5 (E.D. Cal. Oct. 18, 2018) ("Relief under *Bivens* does not encompass injunctive and declaratory relief where the equitable relief sought requires official government action. . . . *Bivens* is both inappropriate and unnecessary for claims seeking solely equitable relief against actions by the federal government . . ..") (internal citations omitted), *R and R adopted as modified on other grounds*, 2019 WL 266323 (E.D. Cal. Jan. 18, 2019).

Further, while this case was previously on appeal, Biron was transferred from FMC-Carswell, where all Defendants are based and where all of her claims arise, to the BOP's FCI-Waseca facility in Waseca, Minnesota.[4] ECF No. 21 (Biron's letter to the Clerk of Court

---

[4] Biron remains housed at FCI-Waseca. *See* www.bop.gov (Lisa Biron, register number 12775-049) (last visited January 6, 2020).

providing new BOP address). Any claims that Biron may purport to have for declaratory relief against the defendants in this case—all FMC-Carswell officials—were therefore rendered moot by Biron's transfer out of FMC-Carswell. *See Smith v. City of Tupelo*, 281 F. App'x 279, 282 (5th Cir. 2008) ("A claim for declaratory and injunctive relief based on conditions of confinement is rendered moot upon the prisoner's release or transfer from the facility."); *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) (transfer mooted claim for declaratory relief, and "any suggestion of relief based on the possibility of transfer back to the [plaintiff's prior facility of incarceration] is too speculative to warrant relief"). If a case becomes moot, it deprives the court of jurisdiction and it should be dismissed under Federal Rule of Civil Procedure 12(b)(1). *Beleno v. Lakey*, 306 F. Supp. 3d 930, 946 (W.D. Tex. 2009) (citing *Spencer v. Kemna*, 523 U.S. 1, 7 (1998)). A court may sua sponte raise a 12(b)(1) motion to dismiss for lack of jurisdiction at any time. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506-07 (2006); *MCG, Inc. v. Great W. Energy Corp.*, 896 F.2d 170, 173 (5th Cir. 1990). And, Rule 12(h)(3) requires the Court to dismiss an action it it determines it lack subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). Therefore, Biron's remaining claim for a declaratory judgment must be dismissed under authority of Rules 12(b)(1) and 12(h)(3).

## III. CONCLUSION AND ORDER

For all of the above and foregoing reasons,

It is **ORDERED** that the Defendants' motion to dismiss for failure to state a claim under Rule 12(b)(6) is **GRANTED** such that all plaintiff Lisa Biron's claims under the First

and Fifth Amendments to the Constitution are **DISMISSED WITH PREJUDICE**; and furthermore, Biron's remaining claim for declaratory judgment is **DISMISSED** for lack of jurisdiction.

      **SO ORDERED** on this **7th day** of **January, 2020.**

Mark T. Pittman
UNITED STATES DISTRICT JUDGE